[No. 6844-0-I.   Division One.   February 25,. 1980.]

MARILYN D. COLEMAN, *Appellant,* v. THE DEPARTMENT
OF EMPLOYMENT SECURITY, ET AL, *Respondents.*

*Cynthia B. Whitaker,* for appellant.

*Slade Gorton, Attorney General, John M. Sells, Assistant,* and *Keith L. Kessler,* for respondents.

ANDERSEN, J.—

### FACTS OF CASE

Until she quit her job, Marilyn D. Coleman did metal finishing work at the Asko Processing, Inc. plant in Seattle. She appeals from a judgment of the King County Superior Court which affirmed an administrative decision denying certain unemployment compensation benefits to her.

Among the reasons that the appellant gave for quitting her job was a serious physical threat made against her by a male coworker. The appellant and another woman worker worked alone on the night shift with the male employee. The three of them were the only employees on the night shift.

The other woman testified that the man became upset over a fancied grievance, stormed into the room where she and the appellant were and that he was red in the face,

gritting his teeth and shouting obscenities at them. As the coworker testified,

[a]nd so he walked over and was right in her face, and said, "you know what I'd like to do, I'd like to punch your cheek right down your throat." He looked like he was going to do it.

The appellant testified:

I just sat there with my mouth shut. I didn't move. He was too close to me. I was afraid. He's a strong man and I didn't feel like losing my front teeth. And he wasn't in any state where you could have talked him down either. He was in a blind rage.

Both women became too upset to complete their work on the shift that night. The supervisor arrived and sent all three home. Then on the following Monday, the next work day, the supervisor discussed the situation with the appellant. The supervisor said he was transferring the man to the day shift, rather than transferring the appellant to the day shift which is what she had requested. It was at this juncture that the appellant gave her 2–weeks' notice that she was quitting.

The foregoing testimony is uncontroverted. Based on it, the appeal tribunal before which the testimony was given concluded that the appellant had good cause to quit. Based on this same record, however, the commissioner later ruled that the appellant had left work voluntarily without good cause and was disqualified from receiving benefits for 10 weeks. RCW 50.20.050.

The commissioner also ruled that the appellant should be denied certain benefits during the time he concluded she was not actively seeking work as required. RCW 50.20-.010(3).

The commissioner's decision being the final administrative determination, it is that which was appealed to the superior court. There the matter was heard on the administrative record and the commissioner's decision was affirmed.

One ultimate issue is presented.

## ISSUE

Did the commissioner of the Employment Security Department err in ruling that the appellant worker did not have good cause to quit her job, and that she had also failed to conduct an active search for work during one period of her unemployment?

## DECISION

CONCLUSION. The commissioner's decision was clearly erroneous as to the former but not as to the latter. Threats of physical violence directed to a worker by a coworker, from which the worker could reasonably conclude that her personal safety was endangered, and which inculcated genuine fear in her, furnished good cause for leaving her employment and did not disqualify her from receiving unemployment compensation benefits.

Review of a decision of the commissioner is pursuant to the administrative procedures act, RCW 34.04. RCW 50.32-.120. Our review is confined to the record made at the administrative level. RCW 34.04.130(5).

Pertinent to this case are the provisions of the administrative procedures act which provide that we may reverse the commissioner's decision only if substantial rights of the worker may have been prejudiced because the administrative findings, inferences, conclusions or decisions: (a) are clearly erroneous in view of the entire record as submitted and the public policy contained in the act of the legislature authorizing the decision or order; or (b) are arbitrary or capricious. RCW 34.04.130(6)(e) and (f).

A finding is "clearly erroneous" when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed. *Ancheta v. Daly*, 77 Wn.2d 255, 259-60, 461 P.2d 531 (1969).

Under the statute in force at the time in question, the employee was not entitled to benefits for a designated time when the employee "left work voluntarily without good cause." RCW 50.20.050; Laws of 1970, 1st Ex. Sess., ch. 2, §

21, p. 20.[1] In making such a determination, "the commissioner shall also consider the degree of risk involved to [the worker's] health, safety . . ." RCW 50.20.100; Laws of 1973, 1st Ex. Sess., ch. 158, § 6, p. 1233.[2]

Good cause for voluntarily quitting a job can be based on a personal reason providing that such reason is a compelling one. *In re Bale,* 63 Wn.2d 83, 88–90, 385 P.2d 545 (1963); *Matison v. Hutt,* 85 Wn.2d 836, 539 P.2d 852 (1975). Insofar as the commissioner decided that the worker did not have good cause under these circumstances, the decision was clearly erroneous.

An assault is an attempt to unlawfully use force or inflict bodily injury on another, accompanied by the apparent present ability to give effect to the attempt if not prevented. *Peasley v. Puget Sound Tug & Barge Co.,* 13 Wn.2d 485, 505, 125 P.2d 681 (1942). The apprehension created in the mind of the victim is a critical factor in determining whether an assault was committed. *State v. James,* 56 Wn.2d 43, 45, 351 P.2d 125 (1960). What happened here was an assault. Then added to the assault was the insult that the employee committing it was the one who received a transfer to the more desirable day shift, rather than the victim who had requested such a transfer.

In point is *Condo v. Board of Review,* 158 N.J. Super. 172, 175, 385 A.2d 920, 922 (1978):

> In our view threats of physical violence directed to an employee from which he may reasonably conclude that his personal safety is endangered thereby inculcating a genuine fear in the employee is an abnormal working condition. As such, it constitutes good cause for that employee to voluntarily leave his employment. An employee cannot reasonably be expected to stay on the

---

[1]RCW 50.20.050 was subsequently changed by Laws of 1977, 1st Ex. Sess., ch. 33, § 4, p. 231 effective July 3, 1977, but the words quoted remain the key operative words in the amended enactment.

[2]RCW 50.20.100 was subsequently changed by Laws of 1977, 1st Ex. Sess., ch. 33, § 6, p. 232 effective July 3, 1977, but the words quoted remain the key operative words in the amended enactment.

job where such threats of physical violence have been made to him.

(Citations omitted.) *See* 81 C.J.S. *Social Security* § 226 (1977).

From our view of the record, we are left with the definite and firm conviction that the commissioner made a mistake in determining that the worker did not have good cause to quit, and as to this aspect of the case, his decision was clearly erroneous. The commissioner's decision that the worker did not have good cause to voluntarily quit is therefore reversed. Having so decided, it is unnecessary to address the alternative grounds for decision urged by the employee.

So far as the commissioner's decision that the employee was ineligible for benefits for 7 weeks, on the basis that she was not actively seeking work during those weeks, we cannot say that the commissioner's decision was clearly erroneous or that it was arbitrary or capricious.

The law provides that an employee is eligible for benefits only if he or she is available for work, and "[t]o be available for work an individual . . . must be actively seeking work pursuant to customary trade practices and through other methods when so directed by the commissioner or his agents; . . ." RCW 50.20.010(3).

In this case, there is evidence that the employee was told by the Department that her work search must include numerous new in-person employer contacts each week and that during the January in question, she contacted only one employer and from the beginning of that February to the middle of March, she made only nine employer contacts, or 1 1/2 contacts per week, although she had work experience in "just about everything" as the appellant herself expressed it.

■ Had it been this court's initial decision to make, we might well have held that this number of employer contacts by a worker in her circumstance amounted to "actively seeking work." However, that was the commissioner's deci-

sion to make under the law, and more is required to reverse his judgment in that regard than that we might weigh the evidence differently. *Farm Supply Distribs., Inc. v. State Utils. & Transp. Comm'n*, 83 Wn.2d 446, 448-49, 518 P.2d 1237 (1974). This is also the kind of decision that is particularly within the commissioner's realm of expertise.

The worker has not sustained her burden of proving the commissioner's decision that she was not actively seeking work (for the period of time he so found) was clearly erroneous, arbitrary or capricious. As to that decision, therefore, the commissioner's ruling is affirmed. RCW 50.32.150; *Schuffenhauer v. Department of Employment Security*, 86 Wn.2d 233, 235, 543 P.2d 343 (1975).

Reversed in part and remanded for further proceedings consistent herewith.

CALLOW, C.J., and DORE, J., concur.