[No. 4944–2–III.   Division Three.   June 7, 1983.]

CHARLOTTE M. HUSSA, *Respondent,* v. THE DEPARTMENT OF EMPLOYMENT SECURITY, *Appellant.*

*Kenneth O. Eikenberry, Attorney General,* and *Mary Ellen Combo, Assistant,* for appellant.

*John Hayden,* for respondent.

*Caroline D. Davis* on behalf of Northwest Women's Law Center, amicus curiae.

GREEN, J.—The Department of Employment Security (ESD) appeals the reversal of the commissioner's ruling which denied Charlotte Hussa unemployment compensation. The issues presented revolve around the question of whether Charlotte Hussa quit work "voluntarily without good cause." We affirm.

The facts are essentially undisputed and are contained in the commissioner's findings. Charlotte was employed by Jeld–Wen, Inc., a wood products company, for approximately 1½ years as a millworker. She was one of three women employees. She was subjected to the following: (1) male workers referred to the female workers in derogatory terms such as "slut", "bitch", and "cunt"; (2) during her last 6 months of employment, one Jose patted her buttocks about 20 times with strips of wood normally used for separating lumber; (3) she was addressed as "bitch" by a co–worker who told her he felt women should not be employed as millworkers; (4) uncontroverted testimony shows Jose had threatened her to prevent her from reporting his behavior to her supervisor; (5) about 2 weeks before she quit, Jose, while operating a forklift, pressed a pallet against her legs causing no injury, and upon her reporting it, Jose explained it was accidental; (6) some 2 weeks before she left work, Jose exhibited himself before her and a female co–worker, Rhonda, with a piece of hose dangling from the unzipped fly of his pants; (7) about 1 week before she quit, Charlotte saw Jose grab Rhonda's breast; and (8) about the same time, she heard that a male co–worker lowered his pants exposing his nude buttocks in the presence of Rhonda. Charlotte only reported the incident where Jose pressed the pallet against her. She testified she did not complain to her supervisor about the sexually abusive conduct because "it was the kind of atmosphere that the staff seemed to be really pro–male and I didn't know if he would believe me or not." She also stated Jose threatened Rhonda

and her if they reported these incidents.

When the supervisor learned of the exposure incident, he called Charlotte to his office to inquire about it and also asked whether male workers had done anything to offend her. She reported she had been offended by coarse and "abusive" language, but declined to implicate anyone or relate any particular occurrence. That same day, October 23, 1980, Jose and the co-worker who had exposed himself were suspended for 3 days pending investigation. At the end of the shift that evening, Charlotte met Jose at a tavern where he told her he was disappointed in her and Rhonda and that "he was going to get [them] one way or another." Charlotte told her supervisor about this threat. The supervisor promised that in the event Jose was not fired, the two would be put in separate work areas. She worked one more shift and on October 27, 1980, she called her supervisor and informed him she was quitting.

On October 29, 1980, she applied for unemployment benefits, which were denied. This denial was affirmed by the appeals tribunal of the ESD. She then petitioned the commissioner of ESD only to be denied again. On June 9, 1981, she sought review of the commissioner's decision by the superior court. The court reversed the commissioner's decision.

### SCOPE OF REVIEW

ESD's administrative proceedings are reviewed by the court under the administrative procedure act, RCW 34.04. RCW 34.04.130(6), which sets out the standards for review, provides:

> The court may affirm the decision of the agency or remand the case for further proceedings; or it may reverse the decision if the substantial rights of the petitioners may have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
>
> (a) in violation of constitutional provisions; or
>
> (b) in excess of the statutory authority or jurisdiction of the agency; or
>
> (c) made upon unlawful procedure; or

(d) affected by other error of law; or

(e) clearly erroneous in view of the entire record as submitted and the public policy contained in the act of the legislature authorizing the decision or order; or

(f) arbitrary or capricious.

It is unclear whether cases involving "good cause" arising under the unemployment compensation statutes, RCW Title 50, are to be reviewed under the "error of law" or "clearly erroneous" standard. For example, it has been held that the issue of whether "good cause" exists to excuse untimely appeals under RCW 50.32.075 presents a mixed question of law and fact reviewable under the "error of law" standard; thus, the court may exercise its inherent and statutory authority to make a de novo review of the record.[1] *Rasmussen v. Department of Empl. Sec.*, 98 Wn.2d 846, 850, 658 P.2d 1240 (1983); *Devine v. Department of Empl. Sec.*, 26 Wn. App. 778, 781, 614 P.2d 231 (1980).

On the other hand, in cases involving a determination of whether a claimant's voluntary unemployment was for "good cause" within the meaning of the statute involved here, RCW 50.20.050(1), the "clearly erroneous" standard has been applied. *Coleman v. Department of Empl. Sec.*, 25 Wn. App. 405, 408, 607 P.2d 1231 (1980); *Cowles Pub'g Co. v. Department of Empl. Sec.*, 15 Wn. App. 590, 597,

---

[1]In *Rasmussen v. Department of Empl. Sec.*, 98 Wn.2d 846, 850, 658 P.2d 1240 (1983), the court stated: "the reviewing court is entitled to exercise its 'inherent and statutory authority to make a de novo review of the record independent of the agency's action" without reweighing the credibility of witnesses (citing *Franklin Cy. Sheriff's Office v. Sellers*, 97 Wn.2d 317, 646 P.2d 113 (1982)). In *Sellers*, at page 330, the court held:

De novo review . . . refers to the inherent authority of this court to determine the correct law, independently of the agency's decision, and apply it to the facts as found by the agency . . .

. . . We hold that it is not the province of the reviewing court to try the facts de novo when presented with mixed questions of law and fact, whether on appeal from a judgment of the superior court, administrative tribunal, or administrative judge.

Other cases have defined de novo to mean ""[a]new; afresh; a second time."" *Department of Motor Vehicles v. Andersen*, 84 Wn.2d 334, 339, 525 P.2d 739 (1974); *see also* Black's Law Dictionary 483 (4th rev. ed. 1968).

550 P.2d 712 (1976). This standard allows the court to find an agency decision is clearly erroneous when, although there is evidence to support it, the court, after reviewing the entire evidence, is left with a definite and firm conviction a mistake has been committed. *Ancheta v. Daly,* 77 Wn.2d 255, 259–60, 461 P.2d 531 (1969). *But see Vergeyle v. Department of Empl. Sec.,* 28 Wn. App. 399, 623 P.2d 736, *review denied,* 95 Wn.2d 1021 (1981) (also involving the issue of whether a claimant was voluntarily unemployed without good cause under RCW 50.20.050(1)). There the court applied the "error of law" standard stating a mixed question of law and fact existed as there was a dispute *both* as to the inferences drawn by the department from the raw facts and the meaning of the statutory term "good cause". *Vergeyle v. Department of Empl. Sec., supra* at 401.

Consequently, we review this case in light of both standards.

## EMPLOYMENT SECURITY ACT

The preamble to the Employment Security Act indicates (1) the purpose of the act is to combat involuntary unemployment; (2) the compulsory setting aside of unemployment reserves under the police powers of the State is "to be used for the benefit of persons unemployed through no fault of their own," and (3) the act is to be liberally construed "for the purpose of reducing involuntary unemployment". RCW 50.01.010; *see also Shell Oil Co. v. Brooks,* 88 Wn.2d 909, 911, 567 P.2d 1132 (1977); *Huguenin v. Department of Empl. Sec.,* 32 Wn. App. 658, 660, 648 P.2d 890 (1982). The act operates on a fault principle. *Ancheta v. Daly, supra* at 261; *Cowles Pub'g Co. v. Department of Empl. Sec., supra* at 593. Therefore, unemployment benefits may be awarded to the voluntarily unemployed if the employee quits for good cause, RCW 50.20.050,[2] and the

---

[2]RCW 50.20.050 provides:

"(1) An individual shall be disqualified from benefits . . . [if] she has left work voluntarily without good cause . . .

" . . .

fault of the unemployment does not lie with the claimant. *Cowles Pub'g Co. v. Department of Empl. Sec., supra* at 593.

That sexual harassment exists in this case is not disputed. It is agreed sexual harassment is good cause for leaving employment. Further, it is agreed threats of physical injury by a co–worker also constitute good cause.

Nevertheless, ESD takes the position that before sexual harassment constitutes good cause for leaving employment within the meaning of the statute, an employee must first establish that reasonable alternatives had been exhausted prior to quitting, relying on WAC 192–16–009(1)(c).[3] In support of this position, ESD argues that here Charlotte Hussa never informed her employer of the sexual harassment until shortly before she quit; the employer took immediate action by suspending the offending employees pending investigation; and Charlotte did not, therefore, have good cause for quitting until she learned of the final action to be taken by her employer. As a result, she did not establish good cause because she failed to exhaust reasonable alternatives under the regulation. Stated another way,

---

"(3) In determining . . . whether an individual has left work voluntarily without good cause, the commissioner shall only consider work–connected factors such as the degree of risk involved to the individual's health, safety, and morals, the individual's physical fitness for the work, the individual's ability to perform the work, and such other work connected factors as the commissioner may deem pertinent, including state and national emergencies."

[3]WAC 192–16–009(1) provides, in part: "[I]n order for an individual to establish good cause within the meaning of RCW 50.20.050(1) for leaving work voluntarily it must be satisfactorily demonstrated;

"(a) That he or she left work primarily because of a work connected factor(s); and

"(b) that said work connected factor(s) was (were) of such a compelling nature as to cause a reasonably prudent person to leave his or her employment; and

"(c) that he or she first exhausted all reasonable alternatives prior to termination: *Provided,* That the individual asserting 'good cause' may establish in certain instances that pursuit of the otherwise reasonable alternatives would have been a futile act, thereby excusing the failure to exhaust such reasonable alternatives."

she quit prematurely. The validity of this regulation is not challenged nor determined here. The exception which provides an individual may be excused from exhausting reasonable alternatives if such would have been futile is applicable.

■■ Generally, good cause for leaving employment requires a person meet the test of what an ordinarily prudent person would have done under the circumstances. *Vergeyle v. Department of Empl. Sec., supra* at 403 (quoting *In re Wedvik,* Empl. Sec. Comm'r Dec. 1107 (1974)). Thus, did Charlotte act as an ordinarily prudent person when she failed to report the harassment to her employer? She testified: she felt her supervisors would not believe her; her co-worker Jose had threatened her if she did report his inappropriate behavior and renewed his threats after she reported being struck with the pallet; she felt going up the ladder would be futile because her supervisor told her and her female co-workers they "had more or less brought it on [themselves]"; and she also felt management was more on the man's side than the woman's side. These feelings were not unreasonable. As the author of *Unemployment Compensation Benefits for the Victim of Work–Related Sexual Harassment,* 3 Harv. Women's L.J. 173, 195 (1980) stated, in a study conducted of federally employed women, it was found "women often do not complain about sexual harassment because they are embarrassed about complaining, are afraid of reprisals and are fearful of not being believed." We find Charlotte acted as an ordinarily prudent woman would in the circumstances.

■ ESD claims that Charlotte should have allowed her employer time to remedy the situation before quitting despite the suspended co-worker's threats to "get" her. It is also claimed these threats were too vague and nonspecific to constitute good cause for quitting. Our court has stated:

> Threats of physical violence directed to a worker by a coworker, from which the worker could reasonably conclude that her personal safety was endangered, and which

inculcated genuine fear in her, furnished good cause for leaving her employment and did not disqualify her from receiving unemployment compensation benefits.

*Coleman v. Department of Empl. Sec., supra* at 408. Further, "[a]n employee cannot reasonably be expected to stay on the job where such threats . . . have been made to him." *Condo v. Board of Review,* 158 N.J. Super. 172, 175, 385 A.2d 920, 922 (1978). Charlotte testified that just after Jose had talked to the supervisor, he came up to her and "gave me a really dirty look and said I wish you could read my mind and went walking, storming out of the building. This was after he'd been suspended." She testified she then went to the tavern where employees customarily met after work to "ask him what exactly he meant by that." As the commissioner found, "He told her that he was 'disappointed' with her and Rhonda and that he would 'get' them." The next day, a Friday, she told her supervisor of these threats and he promised to keep Jose away from her work site. On the following Monday, she telephoned her supervisor that she was quitting. In light of these threats and Jose's past conduct toward her and her female co–workers, a genuine apprehension and fear would have been created in the mind of an ordinarily prudent woman, and Charlotte was not required to await the employer's attempt to remedy the situation.

Whether we review the record in light of the "error of law" standard or the "clearly erroneous" standard outlined earlier in this opinion, the commissioner's conclusion is in error and Charlotte Hussa is not disqualified from receiving benefits under RCW 50.20.050 because she terminated her employment *with* good cause.

Charlotte Hussa is entitled to recover attorney's fees in the amount of $1,000. RCW 50.32.160.

The judgment of the Superior Court reversing the commissioner is affirmed.

MUNSON, A.C.J., and MCINTURFF, J., concur.

Reconsideration denied August 15, 1983.