**EMPLOYMENT SECURITY COMMIS-SION OF WYOMING, Appellant (Respondent),**

v.

**In the Matter of Petition of Paul Kruger BRYANT, III, For Review of the Appeal Decision of Employment Security Commission of Wyoming Concerning the Claim of Paul Kruger Bryant, III, Claimant, and Cathedral Home For Children, Employer, Appellee (Petitioner).**

**CATHEDRAL HOME FOR CHILDREN, Appellant (Employer),**

v.

**In the Matter of Petition of Paul Kruger BRYANT, III, For Review of the Appeal Decision of Employment Security Commission of Wyoming Concerning the Claim of Paul Kruger Bryant, III, Claimant, and Cathedral Home For Children, Employer, Appellee (Petitioner),**

v.

**EMPLOYMENT SECURITY COMMIS-SION OF WYOMING (Respondent).**

Nos. 84–208, 84–209.

Supreme Court of Wyoming.

Aug. 21, 1985.

Philip Nicholas of Corthell and King, Laramie, for appellant Cathedral Home for Children.

Joe Scott, Sp. Asst. Atty. Gen., Casper, for appellant Employment Security Commission of Wyoming.

Caroline A. Papa, Laramie, for appellee.

Before THOMAS, C.J., and ROSE, ROONEY, BROWN and CARDINE, JJ.

BROWN, Justice.

The Employment Security Commission of Wyoming (ESC) disqualified appellee Paul Kruger Bryant from certain benefits. The/

district court reversed the decision of the ESC, restoring appellee to benefits. Both the ESC and the employer, Cathedral Home for Children (Cathedral Home) appeal the decision of the district court.

We will reverse.

According to the ESC the issues are:

"A. Whether the Employment Security Commission of Wyoming erred by basing its decision solely on the evidence introduced at the examiner hearing on this matter and not considering as evidence certain written statements of the parties that are part of the record in this matter, but not introduced into evidence at the examiner hearing, and not considering as evidence the fact that there was a lower level determination in favor of claimant Paul Kruger Bryant, III?

"B. Whether the Employment Security Commission of Wyoming's decision is supported by substantial evidence in light of the whole record and is in conformity with law?"

According to the Cathedral Home the single issue is:

"Is the decision of the Employment Security Division supported by substantial evidence?"

The only issue we need address is the substantial evidence issue.[1]

Appellee Bryant was employed by appellant Cathedral Home from February, 1982 until July, 1982. On or about July 1, 1982, Bryant and a fellow employee, Bill Waines, were involved in an altercation. According to the "incident reports" prepared by Cathedral Home personnel, Waines lost his temper and "grabbed" Bryant. Bryant characterizes the encounter as an assault,

---

**1.** In his brief appellee attempts to inject into the Cathedral Home appeal the following issue:

"Does the Supreme Court have jurisdiction over a matter where the Appellant never exhausted the appeal rights because it failed to petition to the District Court for review of the decision against it, and was never added as a party to the appeal of Appellee herein?"

We do not see the significance of this objection. Both the ESC and Cathedral Home appeal the decision of the district court and address the

same matters in their briefs. Appellee contends that the Cathedral Home did not appeal the ESC decision to the district court. Perhaps it was satisfied with the ESC decision. In any event, the Cathedral Home participated in the review in the district court and defended the ESC decision. If appellee is correct, which we doubt, dismissal of the Cathedral Home appeal would only eliminate one appellant. So far as we can tell, it would not change the issue nor be of any advantage to appellee.

while an appeals examiner's characterization was "physical confrontation."

After Waines regained that which he had previously lost, to-wit, his temper, he apologized to Bryant for his behavior. Bryant filed a criminal complaint against Waines and the latter either pled guilty to, or was found guilty of, an assault and fined $5.

Immediately after the incident with Waines, Bryant left the work site. He returned in about 90 minutes with a handwritten letter of resignation. Bryant filed a claim for unemployment benefits following his separation from the Cathedral Home. On March 10, 1983, a deputy from ESC issued a determination which disqualified Bryant from benefits for eight weeks (July 4 through August 28, 1982) on the ground that he voluntarily quit his work with the Cathedral Home without good cause. On March 14, 1983, Bryant appealed, and the deputy issued a redetermination which held Bryant entitled to benefits without disqualification. At this point the Cathedral Home appealed.

The matter was referred to the ESC's appeals examiner who conducted a hearing on August 2, 1983. Bryant did not attend the hearing. The examiner issued a decision reversing the deputy's redetermination, disqualifying Bryant for eight weeks of benefits for voluntarily quitting without good cause. Bryant appealed this decision to the ESC, which affirmed the examiner's action.

On November 16, 1983, Bryant filed a petition for judicial review of the ESC's final decision with the District Court for Albany County. The district court found Bryant had good cause to quit, reversed the ESC's decision disqualifying Bryant for benefits, and awarded benefits to Bryant without disqualification.

On July 20, 1984, the ESC filed a notice of appeal of the district court's decision to the Wyoming Supreme Court. On the same day, the Cathedral Home filed a similar notice of appeal.

## I

Both appellants, the Cathedral Home and the ESC, speculate that the district court may have been influenced by Bryant's written statements and/or letters appearing in the record, but not introduced into evidence nor noticed by the appeals examiner or the ESC. Appellee contends that the decisions of the appeals examiner and the ESC were based on incompetent evidence.[2]

This is a poor case to discuss the rules of evidence before an administrative agency or the mechanics of noticing materials in the files or otherwise as part of the basis for a decision. Furthermore, this is not the case for this court to attempt to reconcile the mandate in § 16–3–107(r), W.S.1977 ("Findings of fact shall be based exclusively on ·the evidence and matter officially noticed"), with the mandate in § 16–3–109 ("The agency shall consider the whole record or any portion stipulated to by the parties"). We say that this case does not lend itself to a meaningful discussion of those matters because:

1. The hearing before the appeals examiner was informal and so far as we can tell, only one lawyer was involved.

2. The transcript of evidence is taken from a tape recording and is not letter-perfect.

3. Appellee did not testify nor introduce evidence.

4. We do not know whether the hearing examiner, the ESC or the district court considered matters other than the evi-

---

2. Appellee objected to the evidence considered by the appeals examiner asserting that it was hearsay, lacked foundation and otherwise incompetent. On the other hand, appellee proffered evidence of a lesser quality, contending:

"Petitioner asserts, that 'under the substantive evidence rule, as applied in administrative proceedings, *all evidence* is competent and may be considered, *regardless of its source*

*and nature* ... In other words, the competency of evidence for purposes of administrative agency adjudicatory proceedings is made to rest upon the logical persuasiveness of such evidence to the reasonable mind in using it to support a conclusion.' *Black's Law Dictionary, 5th Edition, p. 1281.* (Emphasis added)."

dence produced at the administrative hearing.

More significantly, however, we need not discuss some legal matters suggested by counsel because they are unnecessary to our determination. Under the standard of review set out hereinafter, it does not make any difference if the trial court considered materials not offered or admitted into evidence or considered facts not noticed by the administrative agency. We therefore need not address the first issue raised by the ESC.

II

We believe that our review of this case should be limited to a determination of whether the ESC's decision disqualifying Bryant for benefits is supported by substantial evidence and is in conformity with law.

Review of this matter is governed by § 16-3-114(c), W.S.1977 (October 1982 Replacement), which reads:

"(c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:

"(i) Compel agency action unlawfully withheld or unreasonably delayed; and

"(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:

"(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;

"(B) Contrary to constitutional right, power, privilege or immunity;

"(C) In excess of statutory jurisdiction, authority or limitations or lacking statutory right;

"(D) Without observance of procedure required by law; or

"(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute."

In an appeal from a decision of an administrative agency, we are obliged to review the appeal as though it came directly to this court from the agency. We are not bound to accept any of the conclusions reached in the district court. *Wyoming State Department of Education v. Barber,* Wyo., 649 P.2d 681 (1982).

In *Matter of North Laramie Land Company,* Wyo., 605 P.2d 367, 373 (1980), we said:

"* * * [T]he district court is sitting in a role similar to that of an intermediate court of appeals. On a subsequent appeal to this court, we give no special deference to the decision of the district court but rather independently review the matter using the same materials and the same standards used by the district court. [Citations.] * * * The questions posed to the district court in this intermediate appellate setting are purely questions of law. All fact questions have been decided and resolved by the hearing body. As a matter of appellate practice, an appellate court accords no special deference and is not bound by a district court's decision on a question of law. * * *"

In *Board of Trustees of School District No. 4, Big Horn County v. Colwell,* Wyo., 611 P.2d 427, 428 (1980), we said:

"For the purpose of reviewing the propriety of the district court's action, we will review the agency action as though the appeal were directly to this court from the agency. We are governed by the same rules of review as was the district court. [Citations.]

"Therefore, we will not substitute our judgment for that of the agency. * * *"

In *McCulloch Gas Transmission Company v. Public Service Commission of Wyoming,* Wyo., 627 P.2d 173, 178 (1981), this court reviewed some basic rules about

appeal from a decision of an administrative agency, and said

"[a]s an appellate court considering an appeal from an administrative agency, we must accept the agency's findings of fact when supported by substantial evidence. [Citation.] Substantial evidence is relevant evidence which a reasonable mind might accept as supporting the agency's conclusion. [Citation.] * * *"

In an appeal from an administrative tribunal, we said:

"* * * [T]he rule adopted and followed by appellate courts here and elsewhere of deferring their opinions to the weight and credibility of the evidence to that of the trier of the facts in the first instance should be adhered to in land lease cases. * * *" *Howard v. Lindmier*, 67 Wyo. 78, 86, 214 P.2d 737, 739 (1950).

This standard was also followed in *Board of Trustees of School District No. 4, Big Horn County v. Colwell*, supra; and *Board of Trustees, Laramie County School District No. 1 v. Spiegel*, Wyo., 549 P.2d 1161 (1976).

In *Howard v. Lindmier*, supra, 214 P.2d at 740, we further stated:

"* * * [T]he term 'substantial evidence' does not include the idea of weight of evidence, although it is more than a mere scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. [Citations.] * * *"

Section 9-4-114(c), now 16-3-114(c), W.S. 1977, was amended in 1979. The amendment required agency action, findings and conclusions to be supported by substantial evidence. Additionally, the amendment provided for a review of the whole record.

We said in *Board of Trustees of School District No. 4, Big Horn County v. Colwell*, supra, at 429:

"* * * Under this standard [§ 9-4-114(c), W.S.1977, as amended], we do not

examine the record only to determine if there is substantial evidence to support the Board's decision, but we must also examine the conflicting evidence to determine if the Board could reasonably have made its findings and order upon all of the evidence before it. * * *"

In *Universal Camera Corporation v. National Labor Relations Board*, 340 U.S. 474, 488, 71 S.Ct. 456, 465, 95 L.Ed. 456, 467-468 (1951), it was stated:

"* * * [A] court may [not] displace the Board's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo. * * *"

The above holding was quoted with approval in *National Labor Relations Board v. Walton Manufacturing Company*, 369 U.S. 404, 82 S.Ct. 853, 7 L.Ed.2d 829 (1962); and *Board of Trustees of School District No. 4, Big Horn County v. Colwell*, supra.

Section 26-3-106(a), W.S.1977, provides an individual shall be disqualified for eight weeks of benefits if he has "left his most recent work voluntarily without good cause."[3] Good cause was defined by this court in *Sage Club, Inc. v. Employment Security Commission*, Wyo., 601 P.2d 1306, 1310 (1979):

"'* * * [S]uch a cause as justifies an employee's voluntarily leaving the ranks of the employed and joining the ranks of the unemployed; the quitting must be for such a cause as would reasonably motivate in a similar situation the average able-bodied and qualified worker to give up his or her employment with its certain wage rewards in order to enter the ranks of the compensated unemployed. The terms "good cause" and "personal reasons" connote, as minimum requirements, real circumstances, substantial reasons, objective conditions, palpable forces that operate to produce cor-

---

**3.** Section 26-3-106(a), W.S.1977, was the statute in effect at the time appellee quit his job and filed his claim. The controlling statute now is § 27-3-311(a)(i), W.S.1977 (Cum.Supp.1985). The latter statute retains the language, "Left his

most recent work voluntarily without good cause * * *." The length of disqualification was increased. Other changes in the statutes are not material to this appeal.

relative results; adequate excuses that will bear the test of reason; just grounds for action. * * * ' "

■ In applying the standards of review developed by this court we are satisfied that the decision reached by the ESC to disqualify appellee for benefits from July 4, through August 28, 1982, for voluntarily leaving his employment without good cause is supported by substantial evidence.

Evidence showed that appellee was involved in an altercation and quit his job; there was no evidence that he was injured, and the inference is that the assault was minor. There was also evidence that the assault on appellee was an isolated incident and that the assaulter apologized to appellee and assured an investigator that such an incident would not happen again. Appellee was asked if there was anything that could be done to get him to stay and he said, "No," and that he was not interested in a meeting with his assaulter because he was going to quit anyway. Waines was reprimanded for his assault on appellee. Bryant was encouraged to stay on the job and let the employer deal with Waines, but Bryant did not want to stay.

Letters and statements by appellee in the file, but not in evidence contradict a portion of the evidence produced by the Cathedral Home. However, the appeals examiner and the ESC were not required to believe these statements or could give them such weight as they desired. We may not properly substitute our opinion as to the weight and credibility of the evidence for that of the ESC, nor could the district court. *Spivey v. Lucky McUranium Corporation,* Wyo., 636 P.2d 518 (1981).

■ An employee is not justified in quitting his job because of a minor, isolated confrontation with a fellow employee. This is particularly true if the abused employee does not have reason to believe that further abuse will result if he stays on the job. An aggrieved employee has a duty to report the abuse to his employer and cooperate in some common-sense action to eliminate the problem. *Larson v. Department of Economic Security,* Minn., 281 N.W.2d

667 (1979); *Colduvell v. Commonwealth, Unemployment Compensation Board of Review,* 48 Pa.Cmwlth. 185, 408 A.2d 1207 (1979); *Stacy v. Commonwealth, Unemployment Compensation Board of Review,* 43 Pa.Cmwlth. 355, 402 A.2d 330 (1979); *Denby v. Board of Review of Industrial Commission,* Utah, 567 P.2d 626 (1977).

■ The general rule indicated above would not apply if an employee were seriously injured, had a genuine fear of assault if he returned to work, had good reason to believe that attempts to work out the problem would be futile, or attempt to stop the abuse had failed. None of these exceptions to the general rule apply here, however.

Cases cited by appellee in support of his contention that he had good cause to quit his job are generally cases in which the abuse of the employee was of a serious nature. For example, in *Coleman v. Employment Security Department of Washington,* 25 Wash.App. 405, 607 P.2d 1231, 1232 (1980), Ms. Coleman worked the night shift. A strong, male co-worker, while in a blind rage, threatened to "punch your cheek right down your throat," and appeared ready to do so. She complained to management and asked to be transferred to the day shift. Instead, the male co-worker was rewarded with a transfer to the more desirable day shift. She also had a genuine fear for her safety.

In *Boogay v. Commonwealth, Unemployment Compensation Board of Review,* 46 Pa.Cmwlth. 51, 405 A.2d 1112 (1979), the claimant was an instructor and clerk at a bowling alley frequented by members of youth gangs. As a result of her frequent requests that they leave the premises, she incurred their anger and threats of physical violence. This caused stress which aggravated an existing medical and nervous condition. She had a genuine and reasonable fear for her safety.

In *Break N Eat Corporation v. Commonwealth, Unemployment Compensation Board of Review,* 60 Pa.Cmwlth. 13, 426 A.2d 1262 (1981), the claimant quit

after he was severely beaten by a management official and suffered three broken ribs, loose teeth, and other injuries. He also did not return to work because he feared for his health and safety.

In *Southern Hardware and Lumber Company v. Vesich,* La.App., 250 So.2d 780 (1971), the claimant quit after he was punched in the mouth by an angry customer, and because of the incident, he lost a tooth and had a split lip. Claimant reported this to his employer, whose cavalier response was "the customer is always right."

■ Furthermore, appellee did not meet his burden of proof before the administrative agency. A claimant who has voluntarily left his employment has the burden of proving that he had good cause for doing so, and such good cause must meet the test of ordinary common sense and prudence. Mere dissatisfaction with working conditions does not constitute good cause for quitting one's employment. *Denby v. Board of Review of Industrial Commission,* supra.

> "Where the statute denies compensation to one who leaves his employment voluntarily without good cause, a claimant who has voluntarily abandoned his employment has the burden of proving a good cause. More particularly, a claimant who has terminated his employment voluntarily must prove that the reason for such termination was of a necessitous and compelling nature; that is, he must show that the forces behind such voluntary termination are real, substantial, and reasonable, and that his conduct meets the standards of ordinary common sense and prudence, and that he acted in good faith." 81 C.J.S. Social Security and Public Welfare, § 275, pp. 559–560 (1977).
>
> " * * * A claimant who has voluntarily left his employment has the burden of proving that he had good cause for doing so, and such cause must meet the test of ordinary common sense and prudence." 76 Am.Jur.2d, Unemployment Compensation, § 59, p. 956 (1975).

Appellee did not appear before the hearing examiner or the ESC to give testimony. He did not ask that matters in the files be noticed. Unless the letters and statements in the file are considered, which is questionable, there was not a shred of evidence to support appellee's position. In summary, appellee has not met his burden of proof. Additionally, under our standard of review we cannot substitute our opinion as to the weight and credibility for that of the ESC, unless as a matter of law the decision of the administrative agency cannot be sustained under the evidence of this case.

We reverse the district court and reinstate the decision of the ESC.

ROSE, Justice, dissenting.

The majority resolve this appeal on the ground that substantial evidence in the record supports the final action taken by the Employment Security Commission (ESC or Commission). The threshold question—whether the ESC based its action on all of the evidence in the record—is not addressed. The majority reason that the extent to which the district court considered documents submitted outside the administrative hearing makes no difference since this court is not bound to accept any of the district court's conclusions. The propriety of the evidence before the district court is not at issue, however. The issue is whether the ESC erred in failing to consider as evidence written statements submitted by appellee Bryant outside the appeals hearing but in connection with his application for unemployment benefits.

In my judgment, these statements constitute evidence and the laws of this state require the ESC to consider their probative value in determining Bryant's eligibility for benefits. Because the agency is the finder of fact in this case, *Employment Security Commission of Wyoming v. Laramie Cabs, Inc.,* Wyo., 700 P.2d 399 (1985), the appellate issue of substantial evidence addressed by the majority does not arise until and unless we determine that the ESC considered all of the evidence in the record in the first place.

The ESC admits in its brief that it did not consider Bryant's statements as evidence in reaching its decision:

> "ESC's decision is based on the evidence that was introduced in the evidentiary hearing on this matter and is proper. ESC did not err by failing to consider as evidence written statements made by Bryant outside the evidentiary hearing * * *."

These statements consist of two fact-finding reports, the first submitted to the agency's deputy in support of Bryant's initial claim for benefits and the second in support of his request for a redetermination of the deputy's original decision. These statements are signed by Bryant and provide that the reported facts are true to the best of his knowledge and belief. The record also contains a letter submitted by Bryant to the ESC in response to notification from the Commission of the impending hearing to consider the appeal examiner's decision.

The ESC concedes that these statements are part of the record in this case. The Commission contends, however, that since the documents were not introduced into evidence at the hearing before the appeal examiner, they are not evidence and were not a proper basis for the agency's decision. The Wyoming Employment Security Law, §§ 27–3–101 through 27–3–704, W.S. 1977, and the Wyoming Administrative Procedure Act, §§ 16–3–101 through 16–3–115, W.S.1977, refute this contention.

Under § 27–3–402(a)[1] of the Wyoming Employment Security Law, a deputy designated by the ESC determines a claimant's eligibility for unemployment benefits based in part on the claimant's statement of the facts. The deputy's decision is final unless a party appeals or seeks a redetermination. Since the deputy is the initial finder of fact on behalf of the ESC and since the claimant's statement forms a partial basis for the deputy's decision, such statement constitutes evidence in support of the claim for benefits. For the same reasons, the claimant's statement made in connection with the deputy's redetermination of eligibility pursuant to § 27–3–402(c), W.S.1977,[2] is evidence bearing on a right to benefits.

Section 27–3–404(b) sets out the proper basis for a decision by the ESC upon review:

> "(b) Upon review or appeal and based on evidence previously submitted or upon additional evidence it may direct be taken, the commission may affirm, modify or reverse the findings and conclusions of the appeal tribunal."

The Commission must base its action on *all* of the evidence previously submitted, including the applicant's factual statements given to the deputy, or on additional evidence that it directs be taken, which could include Bryant's letter to the ESC.

Section 27–3–405(a) provides that the Wyoming Administrative Procedure Act governs hearings or appeals before the Commission. Section 16–3–109[3] of the Wyoming Administrative Procedure Act directs the agency to consider the whole record in reaching a decision. Section 16–

1. Section 27–3–402(a), W.S.1977, provides:
"(a) Determination of a claim filed pursuant to W.S. 27–3–401(a) shall be made promptly by a deputy designated by the commission. The determination shall state the weekly benefit amount entitlement for that week for the claimant and if a claim is denied, the reasons for denial. * * * Except as provided by subsection (c) of this section, a determination is final unless a party entitled to notice applies for redetermination or appeals the determination within ten (10) days after notice is mailed or delivered."

2. Section 27–3–402(c), W.S.1977, provides in part:

"(c) The deputy may reconsider a determination if he finds an error in computation or identity, discovers wages of the claimant relevant to but not considered in the determination or finds benefits are allowed, denied or determined on a misrepresentation of facts. * * * A redetermination is final unless a party entitled to notice files an appeal within ten (10) days after notice is mailed or delivered."

3. Section 16–3–109, W.S.1977, provides in part:
"The agency shall consider the whole record or any portion stipulated to by the parties."

3–107(r)[4] of the Act requires the agency to base findings of fact exclusively on the evidence in the record and on matters officially noticed. Evidence in the administrative record may derive from sources other than an evidentiary hearing. *Holding's Little America v. Board of County Commissioners of Laramie County*, Wyo., 670 P.2d 699 (1983).

The weight to be given the statements at issue in the case at bar depends in part on the extent to which they were impeached at the hearing before the appeal examiner. They are, however, proper evidentiary items which the ESC was not entitled to ignore in deciding Bryant's eligibility for unemployment benefits. These statements are not materials submitted by an outsider to the proceedings such as tainted the agency's decision-making process in *Fallon v. Wyoming State Board of Medical Examiners*, Wyo., 441 P.2d 322 (1968). Nor are they matters to which opposing parties had no opportunity to respond. *Clay v. Everett*, 4 Ark.App. 122, 628 S.W.2d 339 (1982). Rather, they are signed statements made by the claimant to the Commission in order to prove his right to benefits pursuant to the employment security law. The Commission had an obligation to consider these statements in deciding Bryant's claim.

I would note further that ample legal authority exists for the proposition that a physical attack or threat of attack by a co-employee constitutes good cause for terminating one's employment. *Escamilla v. Industrial Commission of the State of Colorado*, Colo.App., 670 P.2d 815 (1983); *Hussa v. Employment Security Department of the State of Washington*, 34 Wash.App. 857, 664 P.2d 1286 (1983); *Coleman v. Employment Security Department*, 25 Wash.App. 405, 607 P.2d 1231 (1980). Whether the incident in the case at bar amounts to good cause for appellee's voluntarily leaving the job is a question of fact which must be determined on the basis of all of the evidence properly in the record. I would have remanded this case with directions for the ESC to consider appellee's eligibility for benefits in light of his signed, written statements to the Commission.

---

**4.** Section 16–3–107(r), W.S.1977, provides:
"(r) Findings of fact shall be based exclusively on the evidence and matters officially no-