**In the Matter of the Claim for Unemployment Insurance of Londa WEIDNER, Appellant (Petitioner–Claimant),**

v.

**LIFE CARE CENTERS OF AMERICA, Appellee (Respondent–Employer).**

No. 94–197.

Supreme Court of Wyoming.

April 11, 1995.

Londa Weidner, Phoenix, AZ, pro se.

John C. McKinley and Anthony T. Wendtland of Davis & Cannon, Cheyenne, for appellee.

Before GOLDEN, C.J., and THOMAS, MACY, TAYLOR and LEHMAN, JJ.

GOLDEN, Chief Justice.

Upon the district court's certification pursuant to Wyo.R.App.P. 12.09(b), we must decide whether the decision of the Unemployment Insurance Commission of the Department of Employment of the State of Wyoming (Commission) that Londa Weidner (Weidner), an employee of Life Care Centers of America at its Westview Health Care Center in Sheridan, Wyoming, voluntarily quit her employment without good cause attributable directly to her employment, thereby disqualifying her from the receipt of unemployment insurance benefits, was in accordance with law and supported by substantial evidence.

We hold that the Commission's decision was in accordance with law and supported by substantial evidence; therefore, we affirm the Commission's decision.

## FACTS

Life Care Centers of America employed Weidner at its Westview Health Care Center in Sheridan, Wyoming, from October 1, 1989, through October 1, 1993. During that time period, her employer made her the director of nursing at the Westview facility. In July, 1993, her employer assigned a new executive director to the Westview facility; he became

Weidner's immediate supervisor. Shortly thereafter, Weidner began having concerns about her immediate supervisor's management style. She disagreed with some of his decisions regarding the Westview facility's operations, but did not inform him of her concerns.

On Friday, October 1, 1993, Weidner's immediate supervisor and Weidner met in a counseling session to discuss her job performance. He informed her of his concerns about deficiencies in her job performance. He told her he would not tolerate these deficiencies, and he established specific actions for her to take immediately. He told her they would review her progress on a weekly basis during the month of October. He further informed her he was willing to assist her in whatever way he could and that she should inform him of ways in which he could assist her. From among her several job responsibilities, he removed her scheduling of the nursing staff and placed that task with the assistant director of nursing. Concluding the counseling session, he told her to go home, think about their discussion, and return to work the following Monday, October 4, 1993. On Saturday, October 2, however, Weidner tendered her resignation which stated:

> To Whom It May Concern:
>
> I, Londa Weidner, am giving my resignation as Director of Nursing from Westview Health Care Center, effective today.
>
> The Nursing Department has operated suc[c]essfully for the last 4 years and flourished in the last 2½ years under Sandi LaBar's guidance. The Director of Nursing at this time is no longer allowed to run the nursing department and therefore it cannot operate at it's [sic] usual high standard of performance.
>
> It is the same situation of lack of control as we suffered through with John Walker. As I value my integrity and refuse to be degraded any further, I can no longer be a part of this totally out of control facility. It deeply saddens me to join Sandi LaBar in giving up and leaving the residents, their families and the staff exposed to this situation.
>
> To the Nursing Staff:

> I apologize to you for leaving abruptly but I can no longer tolerate the verbal abuse from other department heads and their failure to behave professionally.
>
> "God grant me the serenity to change the things I can, to accept the things I cannot change and the ability to know the difference."
>
> I'll miss you all.
>
> Londa Weidner, R.N.
>
> /s/ Londa Weidner, R.N.

Weidner then filed a claim for unemployment insurance benefits. A Commission deputy determined that her claim was not disqualified and allowed her claim, holding her employer's account chargeable with any benefits which might be paid to Weidner effective October 24, 1993, for the year ending October 22, 1994. Weidner's employer appealed the deputy's determination to the Commission's appeal examiner. That examiner held an evidentiary hearing on January 3, 1994. At the conclusion of the hearing, the examiner reversed the deputy's determination and found that Weidner quit her job voluntarily without good cause attributable directly to her employment and without a bona fide medical reason involving her health.

Weidner appealed the examiner's decision to the Commission. On May 17, 1994, the Commission affirmed the examiner's decision. Weidner filed her petition for review of the Commission's decision to the District Court, Fourth Judicial District. That court certified the petition to this Court pursuant to the provisions of WYO.R.APP.P. 12.09(b). Weidner did not order a transcript of the evidentiary hearing before the examiner; therefore, a certified transcript of that hearing is not a part of the record on appeal.

## DISCUSSION

On appeal, Weidner challenges the Commission's decision on both procedural and evidentiary grounds. We shall consider her procedural challenge before we address her evidentiary challenge.

Weidner contends she did not receive a copy of the "Employer's Amended Objection

to Employee's Appeal and Argument and Authority"; she was not allowed to attend a Commission meeting; she was denied a copy of the transcript; and she was denied counsel. The employer maintains these contentions lack merit. We agree. Weidner appeared in person and called two witnesses who testified on her behalf at the examiner's evidentiary hearing. She had the opportunity to have counsel present, but, so far as can be discerned, decided to proceed without counsel. She lodged no objection to proceeding without counsel. Her counsel filed an appearance a week after the hearing and filed the appeal and petition for review the following week. The employer's pleadings were served upon Weidner or her counsel. We find no denial to Weidner of any opportunity to present evidence to either the examiner or the Commission.

In early May, 1994, the Commission notified Weidner and her counsel by letter of, and invited their participation in, the May 17 appeal hearing. Her counsel appeared on that occasion. Despite having the opportunity to order a hearing transcript from the Commission, Weidner did not do so. We hold that Weidner's several procedural challenges are groundless.

With respect to Weidner's evidentiary challenge to the Commission's decision, she contends the evidence shows her employer forced her to resign and that the conclusion she voluntarily quit has no support in the record.

Preliminarily, we need to place her challenge in perspective in accordance with our standard of review. As noted earlier, Weidner did not order a transcript of the examiner's evidentiary hearing. In previous cases in which an appellant, who is challenging the decision below on grounds of insufficiency of the evidence, has failed to provide us with a transcript or other proper record of the proceedings below, we have said:

> [O]ur review is severely limited.... It is [appellant's] responsibility to provide a transcript. W.R.A.P. 4.05.... When there is no transcript, the findings of the [trier of fact] are accepted as the only basis for deciding issues pertaining to evidence. In the absence of anything to re-

fute them, we will sustain the findings of the [trier of fact], and we assume that the evidence presented was sufficient to support those findings.

*Osborn v. Pine Mountain Ranch,* 766 P.2d 1165, 1167 (Wyo.1989) (citations omitted); accord, *Combs v. Sherry–Combs,* 865 P.2d 50, 55 (Wyo.1993).

■ When the district court certifies directly to this Court an administrative agency's decision, we review that agency decision "under the same appellate standards applicable to the reviewing court of the first instance." *Matter of Bessemer Mt.,* 856 P.2d 450, 453 (Wyo.1993). Our judicial review is limited to those considerations specified in Wyo.Stat. § 16–3–114 which provides:

> the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:
>
> . . . .
>
> (ii) Hold unlawful and set aside agency action, findings and conclusions found to be:
>
>> (A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;
>>
>> . . . .
>>
>> (E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

Wyo.Stat. § 16–3–114 (Repl.1990).

■ Substantial evidence is such evidence as a "reasonable mind might accept as adequate to support a conclusion." *City of Casper v. Dept. of Employment,* 851 P.2d 1, 3 (Wyo.1993). This substantial evidence may be less than the "weight of the evidence but cannot be contrary to the overwhelming weight of the evidence." *Id.* We review "only the decision of the Commission for substantial evidence." *Id.* at 4.

■ Our review of findings of fact adheres to the following standard:

We examine the entire record to determine if there is substantial evidence to support an agency's findings. If the agency's decision is supported by substantial evidence, we cannot properly substitute our judgment for that of the agency, and must uphold the findings on appeal. Substantial evidence is relevant evidence which a reasonable mind might accept in support of the conclusions of the agency. It is more than a scintilla of evidence.

*Bohren v. Worker's Compensation Div.*, 883 P.2d 355, 357 (Wyo.1994) (quoting *Trout v. Oil & Gas Conservation Comm'n*, 721 P.2d 1047, 1050 (Wyo.1986) (citations omitted)).

■ We give great deference to the Commission's findings of fact in light of its expertise and extensive experience in employment matters. *Beddow v. Employment Sec. Comm'n*, 718 P.2d 12, 14 (Wyo.1986). The agency is charged with determining "the ultimate weight to be given that evidence." *Id.* In addition, the agency is charged with determining the credibility of the witnesses. *Bohren*, 883 P.2d at 357. If the agency's decision is supported by substantial evidence, this Court "cannot substitute [its] judgment for that of the agency, but [this Court is] required to uphold its findings upon appeal." *Beddow*, 718 P.2d at 14.

■ An employee who voluntarily resigns or quits employment has the burden of proving the good cause for quitting work. *Employment Sec. Comm'n v. Bryant*, 704 P.2d 1311, 1317 (Wyo.1985); *Beddow*, 718 P.2d at 15. This Court takes the record as a whole and reviews whether substantial evidence supports the agency's findings of fact. *Casper Iron & Metal v. Unemp. Ins. Comm'n*, 845 P.2d 387, 392 (Wyo.1993). The challenging party has the "burden of establishing the absence of substantial evidence." *Id.*

■ We review conclusions of law to determine whether they are "in accordance with law." *Id.* If the agency applies the incorrect rule of law, this Court does not defer to the agency and corrects the rule of law. *Id.* "Agency decisions are reversed only for errors of law." *Id.; see also Union Tel. Co. v. Public Service Comm'n*, 821 P.2d 550, 557 (Wyo.1991). Therefore, we affirm correct conclusions of law and correct incorrect ones.

■ We begin our review of the Commission's decision with consideration of the applicable statute. The legislature has written:

An individual shall be disqualified from benefit entitlement beginning with the effective date of an otherwise valid claim or on the date the failure occurred, until he has been employed in an employee-employer relationship for a period of at least twelve (12) weeks whether or not consecutive, and has earned at least twelve (12) times the weekly benefit amount of his current claim for services after that date, if the department finds that he:

(i) Left his most recent work *voluntarily without good cause attributable directly to his employment, except for bona fide medical reasons involving his health* [.]

WYO.STAT. § 27–3–311(a)(i) (Cumm.Supp. 1994) (emphasis added).

With this provision, the legislature has specifically directed that an employee shall be disqualified from receiving benefit entitlement if she quits or leaves work "voluntarily without good cause attributable directly to [her] employment." [1] In this context, concerning the meaning of the word "voluntarily," we have said:

[V]oluntary connotes "[u]nconstrained by interference; unimpelled by another's influence; spontaneous; acting of oneself * * * [r]esulting from free choice." Similar language in other jurisdictions' statutes has been interpreted to require "some manifestation of intent to quit" to show a claimant voluntarily left employment. Merely leaving the premises of employment is not enough to determine intent; the totality of the circumstances must be considered.

*Casper Iron & Metal*, 845 P.2d at 396 (citations omitted). Also in this context, concern-

---

1. Weidner does not claim the medical reasons exception is applicable to her case.

ing the meaning of the term "good cause," we have said:

> We have held that "good cause" is such a cause that would justify an employee in voluntarily leaving his job to join the ranks of the unemployed. Consequently, a resignation must be due to such objective circumstances as would reasonably motivate an average able-bodied and qualified worker, exercising common sense and prudence, to abandon the remunerations of his wage for the lesser rewards of compensated unemployment.

*Southwest Wyoming Rehabilitation Center v. Emp. Sec. Comm'n,* 781 P.2d 918, 921 (Wyo. 1989).

The parties have not referred us to any factually similar cases in our unemployment compensation jurisprudence. Our own research reveals none. We have reviewed several annotations for factually similar cases from other jurisdictions. *See, e.g.,* ANNOTATION, *Unemployment Compensation: Eligibility Where Claimant Leaves Employment Under Circumstances Interpreted as a Firing by the Claimant but as a Voluntary Quit by the Employer,* 80 A.L.R.4TH 7 (1990 & 1994 Pocket Part Supp.); ANNOTATION, *Eligibility for Unemployment Compensation of Employee Who Left Employment Based on Belief that Involuntary Discharge was Imminent,* 79 A.L.R.4TH 528 (1990 & 1994 Pocket Part Supp.); and JAMES O. PEARSON, JR., ANNOTATION, *Unemployment Compensation: Harassment or Other Mistreatment by Employer or Supervisor as "Good Cause" Justifying Abandonment of Employment,* 76 A.L.R.3D 1089 (1977 and 1994 Pocket Part Supp.). In several factually similar cases from other jurisdictions, the courts have affirmed agency decisions that the employee voluntarily left employment without good cause in the face of the employer's criticism of the employee's job performance. *See, e.g., Claim of Merriwether,* 197 A.D.2d 732, 602 N.Y.S.2d 242 (3d 1993); *Claim of Ortas,* 187 A.D.2d 851, 589 N.Y.S.2d 714 (3d 1992); *Claim of Krokos,* 184 A.D.2d 871, 585 N.Y.S.2d 120 (3d 1992); *St. Barnabas, Inc. v. Unemployment Compensation Bd. of Review,* 106 Pa.Cmwlth. 191, 525 A.2d 885 (1987); and *Glennen v. Employment Div.,* 25

Or.App. 593, 549 P.2d 1288 (1976). We have said, in one of our decisions in which we denied benefits to an employee who quit after being physically assaulted by a co-worker in an isolated incident at work, that "good cause must meet the test of ordinary common sense and prudence. Mere dissatisfaction with working conditions does not constitute good cause for quitting one's employment." *Employment Sec. Comm'n v. Bryant,* 704 P.2d 1311, 1317 (Wyo.1985).

From these cases emerges the rule that in a case such as this one before us, where procedures are in place in the employment relationship to deal with such job performance problems and are known to the employee, the employee must make a good faith effort to use such procedures in an effort to solve her problems. Common sense and prudence under such circumstances require that the employee use such procedures since that avenue is provided by the employer, rather than submit a resignation without giving herself and the employer the opportunity to solve the problems.

Applying that rule in the case before us, we can reach but one conclusion and that is the Commission's decision is supported by substantial evidence and is in accordance with law. Although before Weidner submitted her resignation letter, her immediate supervisor had criticized her job performance, he had not fired her. He set forth a procedure for both of them to follow with a view toward improving Weidner's job performance. Instead of pursuing that procedure, she chose voluntarily and without good cause to resign. The Commission's decision that that was her intent of her own free will is well within the evidence before it.

We affirm the Commission's decision.