Anita Kaye LOFTIN–BOGGS, Plaintiff,

v.

CITY OF MERIDIAN, MISSISSIPPI, Richard Burnette, Individually and as City Manager, and James L. Garrett, Sr., Individually and as City Engineer and Director of Public Works, Neal Carson, Individually and as Assistant Director of Public Works, Defendants.

Civ. A. No. E85–0011(L).

United States District Court, S.D. Mississippi, E.D.

May 2, 1986.

John Maxey, Cupit & Maxey, Jackson, Miss., for plaintiff.

Jim Becker, Robert H. Pedersen, Watkins & Eager, Jackson, Miss., for defendants.

## MEMORANDUM OPINION

TOM S. LEE, District Judge.

This cause came before the court on the complaint of the plaintiff, Anita Kay Loftin-Boggs, charging that the defendants, James L. Garrett, Sr., individually and as city engineer and director of public works, Neal Carson, individually and as assistant director of public works, and the City of Meridian, Mississippi[1] (City) violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq.[2] Based on testimony and exhibits presented at trial, this court makes the following findings of fact and conclusions of law.

Plaintiff, Anita Kay Loftin-Boggs, was hired by the City to work as a chemist in the public works department. Her responsibilities initially included supervision of the wastewater treatment plant laboratory and were later expanded to include testing for the fresh water plant. The City was required to test the water after treatment at the plant. The test results were reported to the Mississippi Bureau of Pollution Control according to the terms of the City's operating permit and to the plant operator for his use in running the plant. During plaintiff's tenure with the City, she was assisted by either one or two lab technicians. When plaintiff was hired, the City was in the process of building a new waste-

water treatment plant and was operating under a temporary permit until completion of the new plant at which time the City was required to comply with a more stringent permanent permit. Under the hierarchy of the department, plaintiff reported to Tom Childress, environmental engineer, who, along with Leroy Brodway, the plant operator, reported to James Garrett, director of public works.

During the first year of plaintiff's employment, all apparently went well at the wastewater treatment plant. Plaintiff participated in and even initiated some of the crude language and storytelling that was already prevalent in the department.[3] Almost every witness who worked in the department admitted to taking part in the vulgarities. Plaintiff and her superior, Tom Childress, developed a close friendship which became the subject of much speculation. Plaintiff and Childress were aware of the perceived nature of their relationship but neither attempted to quell the rumors. In fact, plaintiff gave credence to the gossip by making jokes about "screwing the boss."

In 1982, plaintiff consulted the city's personnel director, June Pieschel, regarding the use of the grievance procedure to complain about James Garrett's behavior toward plaintiff. According to plaintiff, Garrett made derogatory remarks about women, sexually propositioned plaintiff and other women, and excluded plaintiff from professional meetings because of her sex. Plaintiff's relationship with Garrett was aggravated at least in part by their conflicting views on enforcement of the City's sewer use ordinance. Under the ordinance, users could be charged according to the nature of waste deposited in the system. Plaintiff was of the opinion that enforce-

---

1. At trial, plaintiff moved to dismiss Richard Burnette, individually and as city manager of Meridian, as a defendant. That motion was granted without objection by defendants.

2. Plaintiff's complaint also alleged causes of action under state common law and 42 U.S.C. §§ 1983 and 1985. The statutory claims were heard by a jury which returned a verdict for defendants. The court granted a directed ver-

dict in favor of defendants on the common law claims.

3. Plaintiff testified that at some point, she decided that the language and atmosphere of the department were offensive to her and asked her co-workers to refrain from their use of crude language. She thereafter responded with more crude language of her own.

ment would reduce residential sewage bills and would provide substantial revenue to the City from laboratory fees charged to industries for testing. According to Garrett, enforcement of the ordinance would unduly burden small businesses. He also disagreed with plaintiff's estimates of anticipated revenue from testing and saw her efforts relating to the ordinance as a plan to enlarge her staff and develop an empire in the wastewater treatment plant. In the presence of her co-workers, plaintiff displayed her displeasure with Garrett, Burnette and Carson by making sexually explicit gestures and by referring to them by foul names. Pieschel advised against filing a grievance and plaintiff refrained.

Plaintiff's relationship with Garrett worsened and in May 1983, she did file a grievance. Plaintiff therein recounted two incidents, one in which Garrett had allegedly wrongfully accused her of failing to comply with proper purchase order procedures and one in which Garrett excluded her from a meeting at a local hotel and reprimanded her publicly when she appeared. Plaintiff further stated that she was excluded from staff meetings. In summary, plaintiff stated:

> I request the professional treatment due anyone who would hold my position or one similar with the city; I request to not be threatened, not to be talked to abusively, not to be accused unjustly, and that any disciplinary actions occur in the appropriate manner. I request to be included in any job related staff meetings.

Richard Burnette, city manager, held a hearing on the grievance and concluded that "the basic cause of these problems is the unintentional conflict of personalities of two very bright professionals." He ruled that plaintiff was entitled to courteous and professional treatment by all city employees and was to be included in staff meetings. Garrett wrote to Burnette in response to the ruling, stating that plaintiff was a disruptive element in the department and was the subject of many complaints involving improper purchase orders and use of city time to work on personal business ventures.

Resolution of the grievance did little to improve matters. Plaintiff was thereafter invited to staff meetings. She declined to attend all but one which she left when her steak was not cooked to her satisfaction. Plaintiff also developed a friendship with the Mayor of Meridian and approached him with her complaints against Garrett. By this time, plaintiff had become derelict in her job responsibilities. Her lab technician and Leroy Broadway, plant operator, testified that plaintiff would volunteer to work on holidays and weekends and then fail to perform the tests but would claim compensation for that time. Her failure to perform the tests caused the required reports to be incomplete and inaccurate. Plaintiff's co-workers hesitated to bring her shortcomings to the attention of her superior, Tom Childress, because of the rumors surrounding their relationship. Garrett also testified that he discovered errors in plaintiff's timecards and that he was informed that an important report for which plaintiff had been responsible was not submitted as required to the Mississippi Bureau of Pollution Control. He further stated that plaintiff made unauthorized and personal long distance phone calls on city telephones.

In November 1983, Garrett considered the possibility of firing the plaintiff. He contacted a lawyer for the City who informed him that the proposed reasons for termination, unauthorized use of city telephones, inaccurate testing and falsified timecards,[4] were too old to constitute sufficient grounds. Garrett then contacted Dr. Adnan Shindala, the City's consulting engineer, concerning the staff requirements of the lab under the permanent permit which would be issued in 1984. Shindala advised that a chemist was not required to perform the tests under the new permit. Plaintiff was made aware of these developments by

---

4. At trial, plaintiff denied all of these charges and the court does not rule on whether they are true or whether they alone would have been proper grounds for her termination.

Childress and Pieschel.[5] Thereafter, Burnette and Garrett presented to the city council a proposed reorganization of the lab. Under the plan, the chemist position would be reclassified as laboratory technician II with a lower pay grade, and would be supervised by the plant operator rather than the environmental engineer. The plan was approved and thereafter plaintiff resigned.

Plaintiff contends that defendants' actions constituted sexual harassment. Every circuit presented with the issue has held that sexual harassment may constitute employment discrimination under Title VII. *See, e.g., Henson v. City of Dundee,* 682 F.2d 897, 908–09 (11th Cir.1982); *Miller v. Bank of America,* 600 F.2d 211, 213 (9th Cir.1979); *Tomkins v. Public Service Electric and Gas Co.,* 568 F.2d 1044, 1048–49 (3rd Cir.1977); *Barnes v. Costle,* 561 F.2d 983, 990–91 (D.C.Cir.1977); *Garber v. Saxon Business Products, Inc.,* 552 F.2d 1032, 1032 (4th Cir.1977). In *Simmons v. Lyons,* 746 F.2d 265, 270 (5th Cir.1984), the Fifth Circuit stated that it had never expressly ruled on the issue but could perceive no reason it would reach a contrary conclusion.

Pursuant to its authority to promulgate regulations necessary to carry out its responsibilities, the Equal Employment Opportunity Commission has stated that under certain circumstances sexual harassment may be violative of Title VII.[6] 29 C.F.R. § 1604.11 provides in part:

(a) Harassment on the basis of sex is a violation of Sec. 703 of Title VII. Unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature constitute sexual harassment when (1) submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment, (2) submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual, or (3) such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment.

(b) In determining whether alleged conduct constitutes sexual harassment, the Commission will look at the record as a whole and at the totality of the circumstances, such as the nature of the sexual advances and the context in which the alleged incidents occurred. The determination of the legality of a particular action will be made from the facts, on a case by case basis. [footnote omitted]

■ In *Henson v. City of Dundee,* 682 F.2d 897, 903–04 (11th Cir.1982), the Eleventh Circuit set out the elements to be established by a plaintiff claiming that sexual harassment creates a hostile environment in violation of Title VII:[7]

1. The employee belongs to a protected class;

2. The employee was subject to unwelcome sexual harassment;

3. The harassment complained of was based on sex;

4. The harassment complained of effected a "term, condition, or privilege" of employment; and

5. Requirements of respondeat superior if applicable.

Here plaintiff's proof clearly fails on the second element and consideration of the other criteria is not necessary. Despite plaintiff's testimony, she certainly failed to relate to any of her supervisors or co-work-

**5.** Pieschel apparently spoke to plaintiff both as a friend and as personnel director at the request of Burnette.

**6.** The United States Supreme Court has held that EEOC regulations are "entitled to great deference" by courts. *See Albemarle Paper Co. v. Moody,* 422 U.S. 405, 431, 95 S.Ct. 2362, 2378, 45 L.Ed.2d 280 (1975).

**7.** *Henson* also sets out the elements of proof for a claim of *quid pro quo* sexual harassment, in which the employee suffers damage because of a refusal to engage in sexual relations with a superior. *See* 682 F.2d at 908–09. While questions regarding one's availability for sexual relations were common at the wastewater treatment plant, it is apparent that such questions were merely tasteless and flaccid attempts at humor.

ers that she found the alleged sexual harassment to be embarrassing, humiliating or generally unwelcomed.[8] Plaintiff admitted at trial that she cursed and used vulgar language while at work. According to the testimony of her co-workers, plaintiff often made jokes about sex and participated in frequent discussions and bantering about sex. Any harassment plaintiff received relating to her relationship with Childress was prompted by her own actions, including her tasteless joking. Considering plaintiff's contribution to and apparent enjoyment of the situation, it cannot be said that the defendants created "an intimidating, hostile, or offensive working environment." Additionally, the EEOC regulations provide that the Commission will consider "the nature of the sexual advances and the context in which the alleged instances occurred." The context presented here is one of vulgar and unprofessional conduct by all, including plaintiff. While the situation was certainly not an effective working environment, it also was not the hostile environment prohibited by Title VII.

■ The order of proof in a Title VII disparate case is well established. In *McDonell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the United States Supreme Court held that a plaintiff has the initial burden of proving a prima facie case. The defendant then must articulate a legitimate reason for the discharge. The plaintiff then bears the burden of showing by a preponderance of the evidence that the reasons stated by the defendant are mere pretext for intentional discrimination. *Id.* The ultimate factual inquiry in such a case remains whether the defendants intentionally discriminated against the plaintiff. *United States Postal Service Board of Governors*

*v. Aikens*, 460 U.S. 711, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1984).

To establish a prima facie case, the plaintiff must show:

(1) that she was a member of a protected class;

(2) that she was qualified for her position;

(3) that she was discharged; and

(4) that she was replaced by a male.

*Id.*, 411 U.S. at 802, 93 S.Ct. at 1824.

Plaintiff is a female and is, therefore, a member of the protected class. She also showed that she was performing her work in a generally satisfactory manner when discharged[9] and that her reclassified position was filled by a male.

■ Plaintiff contends that she was constructively discharged when her position as chemist was abolished by the city council in December 1983. Under the law of the Fifth Circuit, "to find a constructive discharge, the court determines whether or not a reasonable person in the employee's position would have felt compelled to resign." *Shawgo v. Spradlin*, 701 F.2d 470, 481 n. 12 (5th Cir.), *cert. denied sub. nom, Whisenhunt v. Spradlin*, 464 U.S. 965, 104 S.Ct. 404, 78 L.Ed.2d 345 (1983). *See also Kelleher v. Flawn*, 761 F.2d 1079, 1086 (5th Cir.1985). Under the facts presented here, the court must conclude that plaintiff was constructively discharged. Plaintiff had heard from reliable sources that her job was in jeopardy. When she learned of the abolition of her position, no mention was made of her status or the possibility of her moving to the new position. Additionally, the laboratory technician II position had a substantially lower salary than that of chemist.

8. Plaintiff's participation in the conduct leading to the creation of the alleged hostile environment does not permanently bar a successful claim of sexual harassment. Once her participation is established, however, she must be able to identify with some precision a point at which she made known to her co-workers or superiors that such conduct would henceforce be considered offensive. Plaintiff's grievance may have conveyed this information but the evidence did not show that her conduct or her reaction to others' conduct changed subsequently.

9. Plaintiff established that she was qualified for purposes of her prima facie case even though the court ultimately determines that her performance was not satisfactory in certain respects.

Defendants argue that plaintiff's position was abolished as part of a restructuring of the wastewater treatment plant. Defendant's argument is supported by the testimony of Dr. Shindala who testified that the reclassification was permissible under the plant's operating permit. The permanent permit did require more tests but, according to Shindala, they could be successfully performed by his seventeen-year-old daughter. The two lab technicians now employed by the City have substantially more education than that and perform the necessary work satisfactorily. The defendants also contend that the reclassification was necessary to restructure the hierarchy within the plant. When plaintiff was hired, she was supervised by Tom Childress, the environmental engineer, and yet her work was primarily utilized by the plant operator. The laboratory technician II is now appropriately under the supervision of the plant operator. Before the council's action, the chemist was paid more than the plant operator. When the chemist position was reclassified to laboratory technician II, the salary was altered to reflect the respective roles.

 Plaintiff contends that the reason articulated by defendants is mere pretext. According to plaintiff, the reclassification plan was not devised until after Garrett was advised by an attorney that he had insufficient grounds to fire her. It cannot, therefore, be disputed that defendants wanted to discharge plaintiff. The evidence shows that plaintiff failed to do necessary laboratory work which she was required to do and which she volunteered to do. Her friendship with Childress and the Mayor made attempts to discipline her unsuccessful. In the end, plaintiff substantially contributed to an unpleasant and ineffective work environment. It was for this reason and not because of her sex that defendants wanted to take action. The reclassification of the position was shown to be a reasonable restructuring of the wastewater treatment plant hierarchy designed to satisfy operating permit requirements with economic efficiency and to remedy the chaos that the system then in effect had allowed plaintiff to create. The mere fact that an employer's action adversely affects a female employee is not sufficient proof of disparate treatment under Title VII. A plaintiff must show an intent to discriminate because of her sex. *See Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Such a showing was not made here.

This court is of the opinion that plaintiff has failed to show that defendants' articulated reason is mere pretext for discrimination. Consequently the court concludes that plaintiff has not established that she was the victim of intentional discrimination in violation of Title VII.

Accordingly, the court concludes that the plaintiff's complaint should be dismissed with prejudice. A separate judgment shall be submitted in accordance with the local rules.