# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 95-CC-00509-SCT

*HOERNER BOXES, INC.*

*v.*

*MISSISSIPPI EMPLOYMENT SECURITY COMMISSION*

| | |
|---|---|
| DATE OF JUDGMENT: | 04/12/95 |
| TRIAL JUDGE: | HON. BARRY W. FORD |
| COURT FROM WHICH APPEALED: | LEE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | KENNETH M. BURNS |
| ATTORNEY FOR APPELLEE: | MARK D. RAY |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES (OTHER THAN WORKER'S COMPENSATION) |
| DISPOSITION: | AFFIRMED - 5/15/97 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 6/5/97 |

**BEFORE SULLIVAN, P.J., PITTMAN AND BANKS, JJ.**

**SULLIVAN, PRESIDING JUSTICE, FOR THE COURT:**

¶1. This case addresses whether someone who voluntarily leaves their employment due to sexual harassment has good cause under Mississippi Employment Security law and is thereby entitled to unemployment compensation benefits.

## I.

¶2. On November 16, 1994, after quitting her employment due to alleged sexual harassment, Patsy Sparks filed for benefits with the Mississippi Employment Security Commission (herein after "MESC"). On November 28, 1994, the MESC claims examiner denied Sparks' eligibility for unemployment benefits. Sparks appealed the claims examiner's determination to the MESC appeals Referee. A hearing was held before the Referee on December 15, 1994. The Referee reversed the claims examiner's finding and awarded Sparks unemployment benefits. The employer, Hoerner Boxes, Inc.(herein after "Hoerner"), appealed the Referee's decision to the MESC Board of Review. On February 6, 1995, the Board of Review affirmed the referee's decision.

¶3. On February 16, 1995, Hoerner filed an appeal in the Lee County Circuit Court. The appeal alleged that the Board of Review decision was not supported by substantial evidence and was against the overwhelming weight of the evidence. Specifically, the appeal claimed that Sparks participated in any misconduct and invited the attention of the other employees. On April 13, 1995, the circuit court affirmed the decisions of the MESC finding no errors of fact or law. Hoerner appeals to this Court.

## II.

¶4. Patsy Sparks worked for Hoerner for nearly two and a half years, from May 1992 until November 16, 1994. On November 16, 1994, Sparks voluntarily left Hoerner. On the same day, Sparks filed for benefits with the MESC. Sparks' application stated that she voluntarily left Hoerner because of alleged sexual harassment by a co-worker.

¶5. At the hearing before the Referee on December 15, 1994, Sparks testified first and was required to present evidence and/or testimony to substantiate that she had good cause to voluntarily leave her employment. Sparks testified that she was sexually harassed by Lewis Lyons. Lyons is a co-worker and has no supervisory position at Hoerner. Sparks worked with Lyons the entire time while employed by Hoerner. Sparks testified that she had problems with Lyons for a little over a year. Sparks testified that she never dated Lyons. Sparks testified that she left Hoerner the day she saw a co-worker, Sandy Ray, sexually harassed by Lyons. After the incident with Ms. Ray that day, Sparks "clocked out" at noon without permission from her supervisor.

¶6. Concerning the Ms. Ray incident, Sparks testified that she turned a corner and saw Lyons pick Ms. Ray up, sling her around, and drop her to the floor. Ms. Ray testified to the same incident. Ms. Ray testified that she was at work talking with two other male co-workers. Lyons came up behind Ms. Ray, put his hands on her shoulder, and reached for her breasts. Ms. Ray protested by moving her elbow and telling him to quit. The co-workers laughed. Lyons eventually grabbed Ms. Ray from behind and jerked her into the air. Ms. Ray began calling for Sparks. When Sparks came around the corner, Lyons dropped Ms. Ray to the floor.

¶7. Sparks testified that the last time Lyons harassed her was a week before the incident with Ms. Ray. Sparks testified that Lyons grabbed her breast while she was cleaning dyes in the sink at her work area. Sparks reported the incident to her supervisor, Wade Thomas. Sparks testified that she has reported such incidents to her supervisor on at least seven occasions. Of these, Sparks testified that she reported incidents to her supervisor, Mr. Thomas, three times by herself and at least four other times with female co-workers.

¶8. Sparks testified that Hoerner has an open door policy. An open door policy is a policy where an employee may go over their immediate supervisor's authority to the next level if an employee has filed a complaint with their immediate supervisor and nothing was done. Sparks testified that she went over her supervisor's head, Mr. Thomas, once on a matter not related to sexual harassment and was punished. Sparks testified that she never went over Mr. Thomas' head about the sexual harassment problem with Lyons; however, she once threatened Mr. Thomas that she would do so. Mr. Thomas laughed at her and warned her that she would probably lose her job. Sparks testified that she was scared to report the sexual harassment to authorities higher than her immediate supervisor. Sparks stated that she witnessed a secretary complain to one of the higher authorities, Mr. Dorsett, who is plant manager and part owner. Sparks testified that the secretary was cursed and humiliated for

making the complaint. On one other occasion, Sparks testified that a supervisor above Mr. Thomas asked her out on a date. Though Sparks did not feel the supervisor had harassed her, she felt she could not report Lyon's sexual harassment to him.

¶9. Sparks testified that Lyons was the only person at the work place that actually touched her. However, Sparks testified that other male employees made derogatory sexual remarks and bodily gestures at the work place. Sparks testified that sexual harassment was an on-going situation. Sparks denied offering sexual favors to others and using explicit sexual language at the work place.

¶10. Ms. Ray also testified at the hearing. Ms. Ray worked with Sparks for Hoerner for approximately four months, from July 28, 1994 until November 16, 1994. Ms. Ray testified that she has seen Lyons make advances towards Sparks. Ms. Ray testified that she saw Lyons touch Sparks' breasts. Ms. Ray testified that she witnessed Sparks complain to Mr. Thomas about Lyons' conduct. Ms. Ray also testified that Lyons sexually harassed her at the work place on occasions other than the November 16, 1994 incident. On her third day at work, Lyons went up to Ms. Ray in the work place and rubbed his private parts on her and said blunt sexual remarks. Ms. Ray testified that she reported the incident to her supervisor, also Mr. Thomas. Mr. Thomas told Ms. Ray that Lyons was only kidding around. Ms. Ray testified that Lyons' harassment was an on-going occurrence. Ms. Ray testified that she never complained to a supervisor above Mr. Thomas because he told her that he would take care of everything. Ms. Ray testified that she was scared to complain to a supervisor above Mr. Thomas because he would punish her. Ms. Ray testified that Lyons kicked her in the back at work and Mr. Thomas saw the incident and merely laughed. Ms. Ray testified that she instigated charges against Lyons for assault due to the kick in the back. Furthermore, Ms. Ray testified that other male workers made derogatory and sexually implicit and explicit comments to her at the work place.

¶11. Mr. Dorsett, plant manager and part owner of Hoerner, also testified at the hearing. Mr. Dorsett testified that Sparks left voluntarily and did not state a reason for doing so. Mr. Dorsett testified that Mr. Thomas reported only one incident of sexual harassment. Mr. Dorsett testified that the co-worker, Lyons, apologized. Sparks' problems were never brought to his attention. Mr. Dorsett testified that Sparks was a good employee, always on time, and never left early.

¶12. Mr. Dorsett testified that once or twice a year Hoerner held meetings with the employees to discuss any problems. Mr. Dorsett testified that he had an open door policy for the employees. Mr. Dorsett testified that if employees were unsatisfied with the handling of the complaints on the floor, then the employees could always come and speak to him. Mr. Dorsett testified that an employment policy has hung on the employee bulletin board since July 30, 1993. At the end of the policy on page 5, the heading "Sexual Harassment" reads, "If you are being Sexually harassed, follow procedure outlined under COMMUNICATIONS on page 3." The heading "Communications" on page 3 of the policy reads, "We encourage employees to discuss matters of concern to them with their Supervisor. If this does not settle the question, he will see that you have the opportunity to discuss it with his Supervisor, or finally, with the plant manager. See also Sexual Harassment page 5." Mr. Dorsett testified that he saw and spoke to Sparks daily and that Sparks never complained about Lyons.

¶13. Mr. Dorsett testified that when Sparks clocked out the day she left Hoerner, she stated, "This is the way you quit." Mr. Dorsett testified that Hoerner conducted an investigation after Sparks and

Ms. Ray left. Mr. Dorsett testified that the investigation revealed that "there was quite a bit of sexual harassment on Patsy[Sparks]'s part." Mr. Dorsett testified that the investigation revealed the following remarks from Sparks to other co-workers: "She's reported to have told several of the employees that she could suck a golf ball through a garden hose. And she could suck a sheet through the crack of her butt. And she could give blow jobs." Mr. Dorsett testified that these statements were voluntarily given to the investigation by co-workers. No one else, including the supervisor Mr. Thomas, testified at the hearing.

¶14. The Referee made written findings of fact and decision. The Referee determined that Sparks voluntarily left her employment after continued sexual harassment. The Referee found that Sparks, as well as other employees, complained to her supervisor about harassment of a co-worker. The Referee found that Sparks' immediate supervisor witnessed some of the physical touching. The Referee found that the supervisor advised Sparks that the problem would be taken care of and not to go above his head. The Referee stated that "the employee has the right to work in an atmosphere that is free of sexual harassment." The Referee concluded that Sparks voluntarily left her employment because the supervisor failed to control a co-worker. After stating that Sparks did take steps to have the situation corrected before leaving, the Referee concluded that Sparks "has shown good cause within the meaning of the law for leaving her employment and her separation was attributable to the employer." The Referee reversed the claims examiner's decision and awarded Sparks unemployment benefits.

## III.

### WHETHER SPARKS MET HER BURDEN OF PROVING GOOD CAUSE FOR LEAVING WORK AS REQUIRED BY MISS. CODE ANN. § 71-5-513?

¶15. Miss. Code Ann. § 71-5-513(A)(1)(a) provides that an employee is disqualified for benefits if the employee left work voluntarily without good cause. According to Miss. Code Ann. § 71-5-513(A)(1)(c), the employee has the burden of proving that the employee has good cause for leaving work; conversely, the employer has the burden of proving employee misconduct. Hoerner argues that Sparks failed to prove that she had good cause for voluntarily leaving her employment. With their "open door" policy in mind, Hoerner contends that Sparks failed to correct the situation at work by not reporting the harassment to any of the management higher than her immediate supervisor. Hoerner contends that Sparks used Ms. Ray's incident as an excuse to quit her employment but receive unemployment benefits.

¶16. Miss. Code Ann. § 71-5-531 governs the standard of review for appealing the MESC Board of Review decision to the circuit court and the Mississippi Supreme Court. Judicial review is limited to questions of law:

> In any judicial proceedings under this section, the findings of the board of review as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of said court shall be confined to questions of law.

Miss. Code Ann. § 71-5-531; *Barnett v. Miss. Emp. Sec. Comm'n*, 583 So.2d 193, 195 (Miss. 1991). The Board's findings of fact are conclusive if supported by substantial evidence and without fraud. *Richardson v. Miss. Emp. Sec. Comm'n*, 593 So.2d 31, 34 (Miss. 1992); *Ray v. Bivens*, 562 So.2d 119, 121 (Miss. 1990); *Meldoy Manor, Inc. v. McLeod*, 511 So.2d 1383, 1385 (Miss. 1987).

We conclude that the record had substantial evidence for the Board of Review to determine that Sparks worked in an environment of sexual harassment and that Sparks did attempt to remedy the problem by reporting incidents to her immediate supervisor. Therefore, the only question before this Court is whether sexual harassment is sufficient to constitute good cause when an employee voluntarily leaves work.

¶17. Hoerner contends that Sparks' claim amounts to an employment law claim of constructive discharge. Adopting criteria from the Fifth Circuit, we stated that constructive discharge results when the employer has made conditions so intolerable that the employee feels compelled to resign. *Bulloch v. City of Pascagoula*, 574 So.2d 637, 640 (Miss. 1990)(*citing Shawgo v. Spradlin*, 701 F.2d 470, 481(5th Cir. 1983)). Hoerner contends that the sexual harassment was not unwelcome since Sparks participated in, and welcomed the creation of the hostile environment. Analogizing an employment discrimination claim under Title VII, Hoerner contends that since an employee helps create and participate in the hostile environment, then the work place environment is not hostile. *Loftin-Boggs v. City of Meridian*, 633 F.Supp. 1323, 1327 (S.D.Miss. 1986). However, in *Loftin-Boggs*, the plaintiff failed to relate to any of her supervisors or co-workers that she found the alleged sexual harassment embarrassing, humiliating, or generally unwelcome. *Id.*, 633 F.Supp. at 1327. In the case *sub judice*, Sparks clearly reported the sexual harassment to her supervisor stating such conduct was unwanted. Furthermore, the Referee and Board of Review implicitly concluded that Hoerner introduced insufficient evidence to determine that the environment was not hostile and that Sparks helped create and participated in the hostile environment. Such a conclusion is based on the fact that the Referee and the Board determined that the workplace environment was hostile. Thus, the Board's conclusion that Sparks was sexually harassed implicitly determined that a) the work place was hostile enough to justify good cause in voluntarily leaving and, b) Sparks did not create and participate in the sexual harassment environment to such a degree that the environment was not hostile.

¶18. This case is of first impression since Mississippi has never determined what constitutes good cause according to the Unemployment Compensation Act in regards to sexual harassment. However, other jurisdictions have addressed this issue. For instance, in *Hussa v. Emp. Sec. Dept.* 664 P.2d 1286 (Wash.App. 1983), the state of Washington found that sexual harassment was good cause for leaving employment. The facts in *Hussa* are similar to those in the case *sub judice*. These facts include: male workers referring to female workers in derogatory comments; unwanted sexual physical touching; and, an immediate supervisor threatening female workers from reporting the unwelcome conduct. *Hussa*, 664 P.2d at 1287. In fact, the issue in *Hussa* was not whether sexual harassment constituted good cause for voluntarily leaving, but rather, whether an employee has exhausted all reasonable alternatives, such as reporting the incidents to higher supervisors, before quitting. *Hussa*, at 1289. *Hussa* concluded that although the employee did not report harassment to any supervisors, the ordinary person would have genuine apprehension and fear and would not have waited for the employer's attempt to remedy the situation before quitting. *Id.*, at 1290. In the case *sub judice*, Sparks did report the sexual harassment to her supervisor.

¶19. In *Curry v. Gatson*, 376 S.E.2d 166 (W.Va. 1988), the West Virginia Supreme Court determined that sexual and racial harassment constituted good cause when an employee left work voluntarily for purposes of unemployment compensation benefits. Similar to Mississippi, the West Virginia Employment Compensation statute does not define "good cause". *Curry*, 376 S.E.2d at 168. Therefore, we conclude that if an employee is sexually harassed to such a degree that an ordinary

prudent employee would leave the ranks of the employed for the unemployed, then the employee should not be denied unemployment compensation benefits.

¶20. In conclusion, we are bound by the Board's findings of fact unless there is not substantial evidence or fraud exists. After reviewing the record and testimony, we conclude that the Board had substantial evidence to determine that Sparks worked in an environment of sexual harassment. We also conclude that sexual harassment in the workplace constitutes good cause for voluntarily leaving employment in the context of unemployment compensation benefit claims.

¶21. AFFIRMED.

LEE, C.J., PITTMAN, BANKS, McRAE, ROBERTS, SMITH AND MILLS, JJ., CONCUR. PRATHER, P.J., CONCURS IN RESULT ONLY.