**MOUNTAIN STATES LEGAL FOUNDATION, Plaintiff,**

v.

**Donald P. HODEL, Secretary of the United States Department of Interior; and Richard Lyng, Secretary of the United States Department of Agriculture, Defendants.**

**No. C86–022–K.**

United States District Court, D.Wyoming.

Aug. 19, 1987.

Constance E. Brooks, Mountain States Legal Foundation, Denver, Colo., and Brent Kunz, Hathaway, Speight, Kunz, Trautwein and Barrett, Cheyenne, Wyo., for plaintiff.

Gerald S. Fish, Dept. of Justice, Land and Natural Resources Div., Washington, D.C. and Carol E. Statkus, Asst. U.S. Atty., Cheyenne, Wyo., for defendants.

## ORDER RULING ON MOTIONS FOR SUMMARY JUDGMENT

KERR, District Judge.

The above-entitled matter having come on regularly for hearing before the Court upon cross-motions for summary judgment; plaintiff appearing by and through its attorneys, Constance E. Brooks and Brent R. Kunz; and defendants appearing by and through their attorneys, Gerald S. Fish, Land and Natural Resources Division, Department of Justice, and Carol E. Statkus, Assistant United States Attorney for the District of Wyoming; and the Court having heard the arguments of counsel and having carefully reviewed and considered said motions, briefs, affidavits, exhibits, and all matters pertinent thereto, and being fully advised in the premises, FINDS:

That the plaintiff Mountain States Legal Foundation (Foundation) filed suit against the Secretaries of the Department of Interior and the Department of Agriculture to challenge the suspension of mineral leasing by the Forest Service and Bureau of Land Management. The Foundation alleges that this suspension of mineral leasing and the delays in acting upon leases in the Shoshone, Targhee, and Bridger-Teton National Forests violates the Mineral Leasing Act of 1920, 30 U.S.C. § 181 et seq.; the Federal Land Policy and Management Act, 43 U.S.C. § 1701 et seq.; the Energy Security Act, 42 U.S.C. § 8855; and the Administrative Procedure Act, 5 U.S.C. § 551 et seq.

The Foundation requests this Court to:

(1) Hold that the failure of the Secretaries of the Department of Interior and Department of Agriculture to act on pending oil and gas leases in the Shoshone, Targhee, and Bridger-Teton National Forests is an unlawful withdrawal of lands under the Federal Land Policy and Management Act and a violation of the Energy Security Act;

(2) permanently enjoin the defendants from pursuing the alleged unlawful policies and procedures with respect to processing mineral lease applications;

(3) declare the Department of Interior's delegation of authority to the Department of Agriculture under the Mineral Leasing Act unlawful and unconstitutional;

(4) declare the failure of the Secretary of the Department of Agriculture to promulgate rules and regulations governing Forest Service review of pending lease offers in accordance with the Administrative Procedure Act to be in violation of the Federal Land Policy and Management Act, 43 U.S.C. § 1740, and

the Court Order issued in *Mountain States Legal Foundation v. Andrus*, 499 F.Supp. 383 (Wyo.1980); and

(5) issue a writ of mandamus directing the Secretary of Agriculture to promulgate rules and regulations in accordance with the Administrative Procedure Act.

The defendants assert that the Secretaries' actions in suspending and delaying mineral leasing pending the completion of an Environmental Impact Statement and a Forest Plan is permissive, within the discretion of the Secretaries, and not violative of federal laws. More specifically, defendants contend that there has been no withdrawal of lands, that lease applications are being processed, and that the Secretary of Agriculture is not required to promulgate rules and regulations.

## FACTS

At the time this action was filed on January 15, 1986, there were at least 72 lease offers, some as old as twelve years, pending for lands located in the Shoshone National Forest. There were also 94 tracts of land in the Shoshone National Forest available for mineral leasing under the simultaneous oil and gas leasing program.

As of February 19, 1987, in the Bridger-Teton National Forest, there were six over-the-counter lease applications and over 100 SIMO lease offers affecting more than one million acres of forest land which were subject to oil and gas leases which have now expired, terminated, or been relinquished. Those tracts of land would be available under the simultaneous oil and gas lease filing system but have not been listed by the Bureau of Land Management as available for leasing since their expiration, termination, or relinquishment. There are also an estimated twenty other SIMO leases in the Bridger-Teton National Forest which have not been issued, one of which belongs to Foundation member, Rosemary Burrow Haas.

On May 29, 1985, the Regional Forester for Region IV in a letter to the Wyoming State Director of the Bureau of Land Management, suspended mineral leasing in the Bridger-Teton National Forest requesting the Bureau of Land Management to delay further processing of oil and gas leases in this area. The Regional Forester based this request on the land's environmental sensitivity and the pending completion of further environmental documentation including a final Environmental Impact Statement and/or a Forest Plan pursuant to the Forest and Rangeland Resources Planning Act, 16 U.S.C. § 1604, as amended by the National Forest Management Act of 1976, 16 U.S.C. § 1604. The Regional Forester also requested that recommendation reports on lease offers in the Bridger-Teton National Forest not yet issued be returned. The Bureau of Land Management has since honored the Forest Service request to suspend such mineral leasing in the Bridger-Teton Forest.

Recently, however, this suspension was lifted in the Big Piney Ranger District of the Bridger-Teton National Forest, Sublette County, Wyoming, Riley Ridge Oil and Gas Field, as evidenced by the "Scoping Statement" issued on July 1, 1987, attached as Exhibit 3 to plaintiff's motion to admit evidence of subsequent remedial acts. This statement allows for leasing decisions in that area to be made on the basis of an environmental assessment rather than waiting for the final Environmental Impact Statement or Forest Plan to be completed.

This Forest Plan, entitled the Bridger-Teton National Forest Land and Resource Management Plan, is being prepared pursuant to the National Forest Management Act of 1976, 16 U.S.C. § 1604. It was released for public comment in October 1986; however, on April 3, 1987 the Forest Service announced that the plan would not be released for another year.

Pursuant to the Mineral Leasing Act, the Secretary of the Interior has authority to issue mineral leases on federal lands, 30 U.S.C. § 226. That authority in turn has been delegated to the Bureau of Land Management, 43 U.S.C. § 1731. The Bureau of Land Management has entered into an interagency agreement with the Forest Service, whereby the Forest Service makes recommendations to the Bureau of Land

Management as to whether a lease application or offer should be issued and under what terms and conditions a lease should be issued in order to protect the surface resources. This agreement is found at 49 Fed. Reg. 37,440 (1984) and supersedes a memorandum of 1947 between the Secretary of Interior and Secretary of Agriculture.

Judge Brimmer found in the case of *Mountain States Legal Foundation v. Andrus*, 499 F.Supp. 383, 390 (D.Wyo.1980), that: through this process the Bureau of Land Management will follow the leasing recommendations of the Forest Service without any independent review. At times, terms of the lease issuance may be modified by the Bureau of Land Management following an administrative appeal. *Id.* at 388–389. Under the terms of the inter-agency agreement, the Forest Service has been making lease recommendations and setting terms and conditions of leasing based upon three existing environmental assessments. These terms may include limitations to protect water quality, soil stability, and productivity, wildlife habitat, and other resources. See also 43 C.F.R. § 3101.7, et seq.

Based upon the requests and recommendations of the Forest Service through the Regional Forester, the Bureau of Land Management has ceased to act upon or issue leases.

## STANDING

On April 2, 1986, the defendants filed a motion for summary judgment challenging the plaintiff's standing to maintain this lawsuit. This Court, by Order of June 17, 1986, denied, without opinion, the defendants' motion for summary judgment. The defendants again raise this issue of standing, so to clarify this Court's intention regarding said Order, the matter is addressed here.

The issue of standing involves a litigant's right to have the merits of a dispute decided by a court and involves both "constitutional limitations on the exercise of federal jurisdiction and prudential limitations on its exercise." *Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975). To satisfy the constitutional limitations, the plaintiff must make out a case or controversy between the defendants and the plaintiff under Article III of the United States Constitution. *Id.* Plaintiff must allege " 'such a personal stake in the outcome of the controversy' as to warrant his invocation of federal-court jurisdiction and to justify the court's remedial powers on his behalf." *Id.* at 498–499, 95 S.Ct. at 2205. The plaintiff must suffer from some real or threatened injury resulting from defendants' actions. *Id.* at 499, 95 S.Ct. at 2205. Furthermore, such injury must be redressable by the relief sought. *Id.*

An association, such as the plaintiff Foundation, not only has standing to assert claims of injury to itself, but may also assert the rights of its members so long as the members' associational ties are adversely affected. *Id.* at 511, 95 S.Ct. at 2211. The association may sue on behalf of one of its members so long as the member is faced with injury from the challenged action, for which the member could himself have brought suit. *Id.;* see also *Sierra Club v. Morton*, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972).

The defendants basically contend that the plaintiff has not shown a causal connection between the challenged action and any legally protected rights; *Jenkins v. McKeithen*, 395 U.S. 411, 423, 89 S.Ct. 1843, 1849, 23 L.Ed.2d 404 (1969); *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 261, 97 S.Ct. 555, 561, 50 L.Ed.2d 450 (1977). Defendants also assert that any alleged injury is not redressable from the standpoint of relief which this Court may offer.

Under the appropriate tests and circumstances of this case, however, the Court is persuaded that the plaintiff Foundation has sufficiently shown that it does have standing to maintain this lawsuit.

The Foundation was created to provide a voice for the right of private property ownership and freedom of enterprise in the development of law by the courts, adminis-

trative agencies and elsewhere; to promote the development and protection of private rights in public resources; and to protect both individual and business enterprise against oppressive, stifling, or unwarranted government action and to hold the government accountable for its actions.

The Foundation seeks relief from this Court on behalf of itself and its members. The Foundation has alleged that its members have been injured by the defendants' failure to act upon mineral lease applications and offers, the suspension of mineral leasing until the final Environmental Impact Statement and the Forest Plan is completed, and by the Forest Service's failure to promulgate formal regulations in accordance with the Administrative Procedure Act. As its basis for standing, the Foundation has provided affidavits by members whose lease applications or offers have been suspended by the defendants.

More specifically, Connie Mull, a Foundation member, had pending lease applications for land in the Shoshone National Forest. The Forest Service took no action until after this suit was filed. The government completed action on the pending lease offers in a matter of months. However, the delay resulted in Mull's lease assignee repudiating the assignment, thereby generating further litigation. Rosemary Burrows Haas, a Foundation member, drew SIMO lease numbered W–85919 in May 1983, which the Forest Service had previously recommended issuance of in March 1983. The lease issuance was delayed by the Bureau of Land Management until August 1986 and the Regional Forester now claims that the SIMO lease is included in the May 29, 1985 suspension of mineral leasing in the Bridger-Teton National Forest, and the lease to Haas remains unissued. Another Foundation member, Clayton Williams, received a lease from the Bureau of Land Management but at the request of the Regional Forester, it was revoked based upon the May 1985 suspension.

 The right to have a lease application or offer considered in accordance with law is sufficient interest for standing. *Pacific*

*Legal Foundation v. Watt*, 529 F.Supp. 982, 990–992 (D.Mt.1981); see also *Arnold v. Morton*, 529 F.2d 1101, 1106 (9th Cir. 1976); *Schraier v. Hickel*, 419 F.2d 663, 667 (D.C. Cir.1969). In *Mountain States Legal Foundation v. Andrus*, 499 F.Supp. at 386, the Foundation's standing to challenge the RARE II program as a de facto withdrawal was granted. The defendants' challenged conduct in this case, which includes mineral leasing suspension, is the stated reason for the defendants' failure to make leasing decisions. Thus, there is a connection between the identified injury of "no action" on mineral leases and the challenged conduct.

Furthermore, it is possible that the relief sought; that is, the setting aside of the Secretaries' actions pursuant to the Administrative Procedure Act on the grounds that those actions are violative of federal law, could possibly redress the asserted injury. Plaintiff does not and cannot seek to have this Court require the defendants to issue the leases. *McDonald v. Clark*, 771 F.2d 460 (10th Cir.1985). However, plaintiff is requesting that any unlawful impediments to have its members' lease applications or offers fairly considered in accordance with statutory requirements be removed. Plaintiff is also requesting the opportunity to make application or offers in the future for the forest areas subject to this litigation. Such are proper requests for relief, and the Article III requirements of standing have, therefore, been met.

The Foundation seeks to enforce the policies established in the Mineral Leasing Act, Mining and Minerals Policy Act, the Energy Security Act, and Federal Land Policy and Management Act. These, however, are not "generalized grievances" which rely upon the rights or interests of third parties not involved in this matter. Instead, the claims of the Foundation specifically refer to these laws and its members' abilities to obtain access to oil and gas leases on federal lands. The plaintiff has shown injury in fact and the Foundation has established the prudential elements of standing.

ENERGY SECURITY ACT

■ Plaintiffs allege that the defendants' actions in delaying and suspending mineral leasing in the Shoshone, Targhee, and Bridger-Teton National Forests are a violation of the Energy Security Act of 1980. The pertinent statute provides that:

> It is the intent of Congress that the Secretary of Agriculture *shall process applications for leases* of National Forest System lands and for permits to explore, drill, and develop resources on land leased from the Forest Service, *notwithstanding the current status of any plan being prepared* under section 1604 of Title 16. [National Forest Management Act of 1976].

(Emphasis added), 42 U.S.C. § 8855.

The clear language of this Act does not permit the Secretary of Agriculture to delay processing of lease applications pending the completion of a Forest Plan. It is evident from the congressionally stated intent that self-sufficiency in our energy resources is of prime importance to the nation. In 42 U.S.C. § 8801, Congress made the following findings: that,

> the dependence of the United States on imported petroleum and natural gas must be reduced by all economically and environmentally feasible means, including the use of biomass energy resources,
> ...

It does not appear from the congressional findings or the legislative history that the language "applications for leases" was meant to restrict the Act and exclude other types of lease offers.

Defendants argue that the lease applications and offers are being "processed" and that the Forest Service is in compliance with the Energy Security Act. The evidence, however, shows that the Regional Forester requested the return of lease files stating that no action would be taken until a final Environmental Impact Statement and/or Forest Plan was completed. It is apparent that "processing" as contemplated by the Act is not being done. The common ordinary meaning of "process" is the action of moving forward from one point to another on the way to completion; it means a continuing development. *Webster's Third New International Dictionary* 1807 (1967). Clearly the defendants' "no action" policy does not comply with the Energy Security Act. Further, the Act does not leave the processing to the discretion of the Secretary of Agriculture but rather mandates, by use of the word "shall," that the Secretary of Agriculture process the lease applications, or as this Court has determined, lease offers, as well.

The defendants contend that they cannot proceed without a final Environmental Impact Statement, arguing that the National Environmental Policy Act, 42 U.S.C. § 4321 et seq., must be complied with first. This Court has seen, however, that a full-blown Environmental Impact Statement is not absolutely required to comply with the National Environmental Policy Act in all circumstances. In the case of *Park County Resource Council v. U.S. Dept. of Agriculture,* 817 F.2d 609, 618–621 (10th Cir.1987), it was held that approval of an application for permit to drill on the basis of an environmental assessment and a finding of no significant impact was proper under the circumstances.

There, the Tenth Circuit observed the important national policy behind the Energy Security Act and went on to state with regard to the National Environmental Policy Act that:

> NEPA, too, reflects an important public policy of this nation: The evidence of precipitous federal decision making at the agency level which may fail to adequately consider the environmental ramifications of agency actions. Although labeled an 'environmental' statute, NEPA is in essence a procedural statute; it does 'not require agencies to elevate environmental concerns over other appropriate considerations.' *Baltimore Gas & Elec. Co. v. Natural Resources Defense Council, Inc.,* 462 U.S. 87, 97, 103 S.Ct. 2246, 2252, 76 L.Ed.2d 437 (1983). NEPA requires only that an agency take a 'hard look' at the environmental consequences of any major federal action. *Kleppe v. Sierra Club,* 427 U.S. 390, 410 n. 21, 96 S.Ct. 2718, 2730 n. 21, 49

L.Ed.2d 576 (1976). NEPA was designed 'to insure a fully informed and well-considered decision.' *Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc.*, 435 U.S. 519, 558, 98 S.Ct. 1197, 1219, 55 L.Ed.2d 460 (1978). Thus, *the hybrid goal for this nation is to encourage the development of domestic oil and gas production while at the same time ensuring that such development is undertaken with an eye toward environmental concerns.* (Emphasis added), *Park County Resource Council v. U.S. Dept. of Agriculture*, 817 F.2d at 620–621. See also *Park County Resource Council v. Bureau of Land Management*, 638 F.Supp. 842 (D.Wyo. 1986).

This is not to say that a full-scale Environmental Impact Statement is never necessary. However, the sincerity of defendants' arguments for the need for a final Environmental Impact Statement before leasing decisions are to be made, is diminished by the Forest Service's recent determination to proceed on leasing decisions in the Big Piney Ranger District of the Bridger-Teton National Forest based upon an environmental assessment.

It is apparent that the requirements of the various federal laws under which defendants operate must be coordinated to best effectuate all the goals of the Acts without violating or ignoring any of the congressionally mandated requirements.

Nevertheless, to the extent that the Secretary of Agriculture has stopped processing lease applications and offers in the Shoshone, Targhee, and Bridger-Teton National Forests in anticipation of a completed Forest Plan and a final Environmental Impact Statement, the Energy Security Act is being violated. This Court must hold unlawful the Secretary's actions which are not in accordance with the law. 5 U.S.C. § 706(2)(A). The Secretary of Agriculture, therefore, must comply with the congressional mandate to process lease applications notwithstanding the status of the Forest Plan.

## WITHDRAWAL OF LANDS UNDER THE FEDERAL LAND POLICY AND MANAGEMENT ACT 43 U.S.C. § 1714

■ The Foundation asserts that the defendants' suspension of mineral leasing in the Bridger-Teton National Forest and their failure to act upon pending lease applications and offers in the National Forests is an unlawful withdrawal of lands in violation of the Federal Land Policy Management Act, 43 U.S.C. § 1714. The defendant Secretaries claim, however, that a withdrawal of lands can only occur when affirmative action is taken and an order of withdrawal entered. Furthermore, the Secretaries contend that mineral leasing does not come within the purview of the withdrawal statutes.

Defendants' arguments ignore the reality of the present situation in light of the federal laws and have previously been rejected by the courts in the cases of *Mountain States Legal Foundation v. Andrus*, 499 F.Supp. 383 and *Pacific Legal Foundation v. Watt*, 529 F.Supp. 982 (D.Mt.1981). In *Mountain States Legal Foundation v. Andrus*, Judge Brimmer held that the moratorium placed on mineral leasing in wilderness study areas under the RARE II program and the failure to act upon leases was a withdrawal within the meaning of 43 U.S.C. § 1702(j) and could, therefore, only be implemented by proper compliance with procedural requirements of the Federal Land Policy and Management Act. In the *Pacific Legal Foundation* case, the court found that the term "withdrawal" as used in the Federal Land Policy and Management Act includes a withdrawal of public lands from mineral exploration and leasing.

The definition of withdrawal under the Federal Land Policy and Management Act states that:

['w]ithdrawal' means *withholding an area of* Federal land from settlement, sale, location, or *entry, under some or all of the general land laws,* for the purpose of *limiting activities* under those laws in order to *maintain other public values* in the area or reserving

the area for a particular public purpose or program; . . .

43 U.S.C. § 1702(j).

Clearly, the acts of suspension of mineral leasing and the unreasonable delay in mineral leasing in the Shoshone, Targhee, and Bridger-Teton National Forests fall squarely within the definition of withdrawal for purposes of the Federal Land Policy and Management Act. The Forest Service is seeking to protect and elevate the use of environmentally sensitive lands above other statutorily mandated uses by stopping mineral leasing until an Environmental Impact Statement or Forest Plan is completed. The action of the Secretaries is more than mere delay in the leasing process; rather, it involves affirmative action to withhold these forest lands from mineral leasing, thereby limiting leasing activities in order to maintain basic environmental values for an indefinite period of time.

In contrast to arguments asserted by the defendants here, the Montana District Court in the case of *Pacific Legal Foundation v. Watt*, 529 F.Supp. at 995–997, concluded that mineral leasing is included in the definition of a withdrawal based on several factors. First, the term "mineral leasing" appears in several subsections of 43 U.S.C. § 1714. Second, the legislative history's reference to retaining the "traditional meaning" of a withdrawal does not support the conclusion that Congress intended to exclude mineral leasing from the procedural provisions regarding withdrawals of federal land. Third, the district court distinguished the case of *Udall v. Tallman*, 380 U.S. 1, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965) as applying the use of "withdrawal" only to the specific public land order in question. Fourth, the district court noted that other Secretaries have withdrawn land from mineral leasing under the authority in 43 U.S.C. § 1714 of the Federal Land Policy and Management Act. For all of these reasons, the district court held that the definition of a withdrawal includes mineral activities under the Mineral Leasing Act.

■ This Court is persuaded by the sound reasoning and analysis made by Judge Jameson in *Pacific Legal Foundation* and concludes that mineral leasing activities pursuant to the Mineral Leasing Act are included within the purview of the Federal Land Policy and Management Act's withdrawal provisions.

■ Further, this Court concludes that the fact that the Secretary of Interior has discretionary authority in leasing government lands under oil and gas leases, pursuant to the Mineral Leasing Act of 1920, *McDonald v. Clark*, 771 F.2d at 463, does not extend to permit the Secretary of the Interior, acting together with the Secretary of Agriculture, to deprive lease applicants or offerors of the right to have their leases fairly considered under the proper statutory requirements. *Schraier v. Hickel*, 419 F.2d at 667; *Arnold v. Morton*, 529 F.2d at 1106. The Secretaries' suspension and delay in mineral lease processing under the present circumstances has deprived plaintiff and its members of just that right. Therefore, the Secretaries' actions are clearly an abuse of discretion and not in accordance with the law and must be set aside as unlawful. Administrative Procedure Act, 5 U.S.C. § 706(2)(A).

■ Moreover, the Secretary of Interior's mineral leasing discretion is not so broad as to allow the Secretary to refuse to act upon lease applications and offers in large areas of land thereby effectively removing the lands from the operation of the Mineral Leasing Act without following the proper procedural requirements of the withdrawal provisions, § 204 of the Federal Land Policy and Management Act, 43 U.S.C. § 1714; *Mountain States Legal Foundation v. Andrus*, 499 F.Supp. at 391–392; 1 American Law of Mining § 20.-02[3] at 20–12 (Rocky Mtn. Min. L. Inst. 2d ed. 1986).

In *Mountain States Legal Foundation v. Andrus*, 499 F.Supp. at 392, 395, the district court considered and rejected the government's argument that the definition of a withdrawal does not apply to mineral leasing because it is a discretionary decision, finding that there are limits to the Secretary's exercise of that discretion.

The court there also suggested that applicability of the Secretary's discretion as pertaining to a specific lease must be differentiated from general applicability of that discretion. *Id.* citing *Edras K. Hartley*, 23 IBLA 102 (1975).

Under the provisions of the Federal Land Policy and Management Act, 43 U.S.C. § 1714, certain procedures must be followed by the Secretary to properly effectuate a withdrawal. These procedures include such matters as a hearing (§ 1714(h)), publication of notice in the Federal Register (§ 1714(b)), and a report to Congress (§ 1714(c)). The Secretary of Interior has admittedly failed to follow the withdrawal procedures of 43 U.S.C. § 1714 under the Federal Land Policy Management Act.

Based on all the foregoing, this Court, therefore, concludes the actions taken by the Secretaries in delaying and suspending mineral leasing in the aforementioned forests is an impermissible withdrawal of land by failure to comply with the requirements of 43 U.S.C. § 1714, and that such action is unlawful as an abuse of discretion and not in accordance with the law. 5 U.S.C. § 706(2)(A).

## RULES AND REGULATIONS

Plaintiff seeks to set aside the Regional Forester's suspension of mineral leasing as violation of the Administrative Procedure Act and the Federal Land Policy and Management Act. Plaintiff also seeks a writ of mandamus directing the Forest Service to promulgate regulations as previously ordered in *Mountain States Legal Foundation v. Andrus*, 499 F.Supp. at 397.

In *Mountain States Legal Foundation v. Andrus*, the Bureau of Land Management through the Department of Interior, and the Forest Service through the Department of Agriculture, were ordered to promulgate rules and regulations, in accordance with the Administrative Procedure Act, governing the policies of the departments regarding the grounds on which oil and gas lease applications may be rejected, approved, or suspended in relation to the cooperative agreement between the departments regarding such leasing activity.

499 F.Supp. at 397. Following this ruling the Interior Department promulgated regulations at 43 C.F.R. § 3101.7, et seq.; however, the Department of Agriculture has not yet done so. While the government has argued in this lawsuit that the Department of Agriculture is not required to promulgate regulations and that the *Mountain States v. Andrus* case was incorrect, the decision was never appealed.

The Forest Service reviews proposed lease decisions to impose terms and conditions intended to protect the surface resources. The Bureau of Land Management has not refused to accept or comply with the Forest Service recommendations in this case, and the Bureau of Land Management did not request the Forest Service to respond to pending lease applications even though the applications were at the Forest Service office for several years. The Bureau of Land Management agreed to the Regional Forester's suspension and returned all of the previously approved lease offers without question. Indeed, the Bureau of Land Management readily revoked Clayton Williams' lease when the Forest Service claimed that it was inadvertently approved. Thus, for all purposes and intents, the Forest Service is apparently exercising sufficient leasing responsibilities under the Mineral Leasing Act as well as surface management responsibilities under the Organic Act, 16 U.S.C. § 475, Multiple Use Sustained Yield Act, 16 U.S.C. §§ 528 et seq., and the National Forest Management Act, 16 U.S.C. §§ 1600–1614.

Rulemaking in accordance with the Administrative Procedure Act is required when the agency action is a substantive or legislative rule, as opposed to an interpretative rule. 5 U.S.C. § 553. A substantive/legislative rule is one affecting individual rights and obligations. *Chrysler Corp. v. Brown*, 441 U.S. 281, 302, 99 S.Ct. 1705, 1717, 60 L.Ed.2d 208 (1979). A legislative rule is defined as:

the whole or a part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy or describing the organization, proce-

dure, or practice requirements of an agency.

5 U.S.C. § 551(4).

The Forest Service's standards for making lease recommendations involve the exercise of legislative authority under the aforementioned statutes. The exercise of such authority applies to future facts and implements the laws and is, therefore, a legislative rule.

The Court is, therefore, persuaded that the Department of Agriculture is required by law to promulgate rules and regulations regarding its policies and procedures pertaining to recommendations on leasing activities. Such promulgation is mandated by the Federal Land Policy and Management Act, 43 U.S.C. § 1740, National Forest Management Act, 16 U.S.C. § 1613, the Administrative Procedure Act, 5 U.S.C. § 551, and the decision of Judge Brimmer in *Mountain States v. Andrus,* 499 F.Supp. 383.

However, since the filing of this lawsuit, the Department of Agriculture has recently proposed to issue regulations which will:

> [s]et forth the rules by which the Forest Service will process and respond to proposal received from the Department of Interior (DOI) for the issuance of mineral licenses, prospecting permits and leases, and for approval of operating plans,

52 Fed.Reg. 14,148 (1987) (to be codified at 43 C.F.R. 228, Subpart B), (Proposed April 27, 1987). This Court, therefore, finds it unnecessary at this time to order the Department of Agriculture to promulgate such rules and regulations.

NOW, THEREFORE, IT IS ORDERED that plaintiff's motion for summary judgment be, and the same is, hereby granted to the extent set forth herein; it is

FURTHER ORDERED that defendant Secretary of Agriculture be, and is, hereby required to comply with the mandatory provision of the Energy Security Act, by *"processing"* all lease applications and offers notwithstanding the status of the proposed Forest Plan; it is

FURTHER ORDERED that the suspension of mineral leasing in the National Forests as initiated by the Forest Service and followed by the Bureau of Land Management as it now exists, be, and the same is, hereby set aside as unlawful; it is

FURTHER ORDERED that the Secretary of Interior shall report the withdrawal of the affected lands in the National Forests to Congress within thirty (30) days from the date of this Order pursuant to 43 U.S.C. § 1714(c), or cease withholding said lands from oil and gas leasing exploration and development for the purpose of elevating environmental concerns pending the completion of the Forest Plan; it is

FURTHER ORDERED that defendant Secretaries' motion for summary judgment be, and the same is, hereby denied.

DATED this 19th day of August, 1987.