856 P.2d 450 (1993)
In the Matter of a Petition To Designate BESSEMER MT. as Rare and Uncommon.
RISSLER & McMURRY, Petitioner,
v.
ENVIRONMENTAL QUALITY COUNCIL, Respondent.
No. 92-226.
Supreme Court of Wyoming.
July 15, 1993.
*451 Donald J. Rissler, Brown, Raymond & Rissler, P.C., Casper, for petitioner.
Joseph B. Meyer, Atty. Gen., Mary B. Guthrie, Deputy Atty. Gen., for respondent.
Before MACY, C.J., and THOMAS and GOLDEN, JJ., ROONEY, J., Retired, and LANGDON, District Judge, Retired.
THOMAS, Justice.
The essential question posed in this case is whether the Environmental Quality Council (EQC) can, pursuant to WYO.STAT. § 35-11-112(a)(v) (Supp.1992), classify lands within the state as "very rare or uncommon" without adopting by regulation the criteria or factors that will establish a standard for such a classification. We are satisfied that, in the absence of factors or criteria established by regulation, the phrase "very rare or uncommon" is too amorphous to permit judicial review of the action of the EQC, as required by statute. In the absence of the appropriate criteria or factors adopted by administrative rulemaking,[1] classifications made on an ad hoc basis are inherently arbitrary and capricious. We reverse the decision of the EQC and remand this case for a determination in the light of appropriate standards for such classifications, adopted pursuant to a regular rulemaking proceeding conducted in accordance with the Wyoming Administrative Procedure Act.
The issues certified to this court by the trial court are stated in this way:
1. Whether the actions of the Environmental Quality Council in designating Bessemer Mt. as Rare and Uncommon are arbitrary, capricious and an abuse of discretion.
2. Whether the actions of the Environmental Quality Council violate Appellant's due process and equal protection rights.
3. Whether the actions of the Environmental Quality Council in designating Bessemer Mt. Rare and Uncommon are in excess of its statutory jurisdiction.
4. Whether the actions of the Environmental Quality Council violate State Law and Administrative Procedure.
5. Whether the actions of the Environmental Quality Council are supported by substantial evidence as demonstrated in the record.
The relevant facts in this case are minimal. The EQC, pursuant to WYO.STAT. § 35-11-112(a)(v) (quoted here-in-below), designated nine sections of land in Natrona County, southwest of the city of Casper, known as Bessemer Mountain or Red Butte, as "rare and uncommon." This designation was the product of a hearing held by the EQC on April 23 and 24, 1992. Public notice of the hearing was published in the CASPER STAR TRIBUNE, and notice was mailed to all of the individual landowners in accordance with the statute.
At the hearing, several people spoke both for and against the designation. The EQC reviewed all the comments, both oral and written, and determined the area should be designated as "rare and uncommon." On August 7, 1992, the Principal Statement of Reasons behind the EQC's decision was filed with the Secretary of State.
Rissler & McMurry, a construction company holding a mineral lease on a school section in the designated area, filed a petition for review of the decision of the EQC. Rissler & McMurry and the EQC agreed the matter should be certified to this court, because of the constitutional and procedural questions involved and in the best interest of justice and economy. A joint motion to certify the case was filed on September 25, 1992, and that motion was granted on September 28, 1992.
The primary issue encompassed by the certified questions is the propriety of a *452 classification by the EQC of certain lands as "very rare or uncommon" pursuant to WYO.STAT. § 35-11-112(a)(v) (Supp.1992), which provides:
(a) The council shall act as the hearing examiner for the department and shall hear and determine all cases or issues arising under the laws, rules, regulations, standards or orders issued or administered by the department or its air quality, land quality, solid and hazardous waste management or water quality divisions. Notwithstanding any other provision of this act, including this section, the council shall have no authority to promulgate rules or to hear or determine any case or issue arising under the laws, rules, regulations, standards or orders issued or administered by the industrial siting or abandoned mine land divisions of the department. The council shall:
* * * * * *
(v) Designate at the earliest date and to the extent possible those areas of the state which are very rare or uncommon and have particular historical, archaeological, wildlife, surface geological, botanical or scenic value. When areas of privately owned lands are to be considered for such designation, the council shall give notice to the record owner and hold hearing thereon, within a county in which the area, or major portion thereof, to be so designated is located, in accordance with the Wyoming Administrative Procedure Act.
We note in passing that, in order to be designated as "very rare or uncommon," a tandem requirement is found in the statute. First, the land must be "very rare or uncommon" and, second, the land must have some "particular historical, archaeological, wildlife, surface geological, botanical or scenic value."
The disposition of this case is foreshadowed by the following colloquy from the hearing record:
EQC MEMBER: But the problem is that if it isif what is scenic is a subjective determination in every case, if we just kind of roll them around the state, and we go into John Shiffer's home and make some decisions about whether he lives in a scenic place, or go into my place and make a decision about whether I live in a scenic place, the opponents of this will always complain that we're making those decisions on an arbitrary basis, that we are not applying standards. And I'm just wondering if you have any standards to suggest to us, as difficult as that is?
[ATTORNEY IN SUPPORT OF THE DESIGNATION]: Well, honestly, I don't. But I certainly understand the problem that you've raised, and I acknowledge that it will dog your heels in every one of these cases. You will have those who are affected by the rare and scenic designation complaining that the criteria are not sufficiently set, that the Rules of Procedure are not clear enough, they haven't been reduced to writing, and there is too much movement then that is permitted in each case.
I recognize that that is a very real argument.
Several interested persons did attend the hearing in Casper concerning the question of whether Bessemer Mountain was "very rare or uncommon," pursuant to the statute. During the public hearing, discussions were focused on the statute and the various meanings of the words in it.
The word "scenic" was clearly of some import. The attorney appearing for Rissler & McMurry expressed the view that "scenic" was in the eye of the beholder. When asked what the words "rare and uncommon" meant, one of the people at the hearing said, "You asked the right person, because I tried to write a law that defined scenic this year; * * *. I finally threw up my hands and decided that scenic probably is in the eye of the beholder, * * *." We perceive fundamental truth in that statement, and we simply add that the same comment very clearly applies to "very rare or uncommon." What might appear to be "very rare or uncommon" to one person, such as an area like Bessemer Mountain, might seem simply ordinary to another. Furthermore, the perception of the EQC *453 might change from site to site throughout the state.
Our task is to apply to this determination the standard for review of an agency decision as stated in the Wyoming Administrative Procedure Act, WYO.STAT. § 16-3-114 (1990), which states, in pertinent part:
(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:
(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;
(B) Contrary to constitutional right, power, privilege or immunity;
(C) In excess of statutory jurisdiction, authority or limitations or lacking statutory right;
(D) Without observance of procedure required by law; or
(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.
When the administrative agency's decision is certified to the Wyoming Supreme Court, pursuant to WYO.R.APP.P. 12.09, we review the decision under the same appellate standards applicable to the reviewing court of the first instance. Texaco, Inc. v. State Bd. of Equalization, 845 P.2d 398 (Wyo. 1993); Amax Coal Co. v. Wyoming State Bd. of Equalization, 819 P.2d 825 (Wyo. 1991) (both cases citing Application of Campbell County, 731 P.2d 1174 (Wyo. 1987)).
As one premise for its argument that the decision of the EQC was arbitrary, Rissler & McMurry points out the EQC has not adopted any rules to aid it in making the determination of the status of the land as "rare and uncommon." We agree with this observation by Rissler & McMurry and hold the EQC cannot classify lands within the state as "very rare or uncommon" without first establishing by regulation the criteria and factors which will set the standard for that classification. We are satisfied that, in the absence of such a regulatory standard, the phrase "very rare or uncommon" is too amorphous to permit judicial review of the action of the EQC. Consequently, any such classification inherently is arbitrary and capricious.
Before we impose the obligation to create standards by rulemaking, we must determine that the legislature afforded such authority to the EQC. We conclude the authority to develop the criteria and factors, which will serve as standards for the "very rare or uncommon" classification, is vested in the EQC in two ways. First, rulemaking in accordance with the Wyoming Administrative Procedure Act is necessary when a proposed action of an agency is substantive or legislative, as opposed to interpretive. See Mountain States Legal Foundation v. Hodel, 668 F.Supp. 1466 (D.Wyo.1987). "A substantive/legislative rule is one affecting individual rights and obligations." Hodel, 668 F.Supp. at 1475 (citing Chrysler Corp. v. Brown, 441 U.S. 281, 302, 99 S.Ct. 1705, 1718, 60 L.Ed.2d 208 (1979)). Hodel then defines the legislative rule adopted by the agency as:
The whole or a part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy or describing the organization, procedure, or practice requirements of an agency. 5 U.S.C. § 551(4).
Hodel, 668 F.Supp. at 1475-76.
The second authorization for the EQC to adopt regulations in this instance is found in the particular statute relating to the subject matter. WYO.STAT. § 35-11-112(a)(i) (Supp.1992) provides:
Promulgate rules and regulations necessary for the administration of this act, after recommendation from the director of the department, the administrators of the various divisions and their respective advisory boards; * * *.
This statute encompasses an express provision manifesting a specific delegation of the legislative power to the EQC to act in a legislative capacity and supplement the statute by filling in the details or making the law. The act does not leave the promulgation of the rules to the discretion of *454 the EQC but, instead, the statute uses the word "shall," ordinarily regarded as mandatory, and directs the EQC to promulgate rules and regulations after receiving recommendations from the various persons and entities listed.
The general policy justifying the rulemaking function of an administrative agency is found in 1 AM.JUR.2D Administrative Law § 111, at 911 (1962) (footnotes omitted), adopted from the cases there cited:
Necessity fixes a point beyond which it is unreasonable and impracticable to compel the legislature to prescribe detailed rules for the purpose of avoiding an unconstitutional delegation of legislative power; it then becomes constitutionally sufficient if the legislature clearly delineates the general policy, the public agency which is to apply it, and the boundaries of this delegated authority. The legislature is not denied the necessary resources of flexibility and practicality, which will enable it to perform its function in laying down policies and establishing standards, while leaving to selected instrumentalities the making of subordinate rules within prescribed limits and the determination of facts to which the policy as declared by the legislature is to apply. If this could not be done, there would be infinite confusion in the laws, and in an effort to detail and to particularize they would miss sufficiency both in provision and execution, and the many administrative agencies created by the state and national governments would be denuded of their utility, and government in some of its most important exercises become impossible.
The Wyoming Administrative Procedure Act, WYO.STAT. § 16-3-106 (1990), sets forth the procedural authority for rulemaking:
Any interested person may petition an agency requesting the promulgation, amendment or repeal of any rule and may accompany his petition with relevant data, views and arguments. Each agency may prescribe by rule the form of the petition and the procedure for its submission, consideration and disposition. Upon submission of a petition, the agency as soon as practicable either shall deny the petition in writing (stating its reasons for the denials) or initiate rulemaking proceedings in accordance with W.S. 16-3-103. The action of the agency in denying a petition is final and not subject to review.
In this instance, we discover an express provision in the statute by which the legislature authorized the EQC to promulgate rules and regulations necessary for the administration of the act. We are satisfied the intent of the legislature was to invoke the expertise of the EQC to establish by regulation the factors and criteria that will serve as a standard for making the classification of "very rare or uncommon." When the legislative mandate is broad, as in this case, the administrative agency must invoke expertise to create standards, which will furnish notice to the public of how the decision may be reached. The creation of such standards serves to eliminate any need to develop standards on a case by case basis, which is time-consuming; may lead to inconsistent results; and severely inhibits judicial review.
The policy approach, pursuant to which we decide this case, is aptly articulated in KENNETH CULP DAVIS, ADMINISTRATIVE LAW TREATISE § 7:26, at 128 (2d ed. 1979):
The law may be in the early stages of a massive movement toward judicially required rulemaking that will reduce discretion that is unguided by rules or precedents. Under the new law, agencies that use systems of precedents are still generally free to choose between adjudication and rulemaking, but agencies without systems of precedents may be judicially required to use their rulemaking power to provide guiding standards.
Persuasive authority justifying this requirement is found in the cases cited in the treatise following the quotation. We are satisfied this is an instance in which it is appropriate to require the EQC to choose between adjudication and rulemaking in order to provide for use in the future those factors and criteria that will serve as the standard for designating lands as "very *455 rare or uncommon." This requirement will not only facilitate the adjudicative process, but will result in judicial review being more meaningful and significant.
The EQC cites several Wyoming cases in urging its claim that the designation of this area as "rare and uncommon" was not arbitrary, capricious, or an abuse of discretion. Town of Torrington v. Envtl. Quality Council, 557 P.2d 1143 (Wyo.1976), is cited for the proposition that requiring a rule for every possible matter that might come before an agency is unduly restrictive. The EQC fails to focus, however, on the caveat that:
We are careful to note at this point that there may be situations in which rules and regulations are "necessary" in connection with establishment of a new site but we must confine ourselves to the case at hand.
Town of Torrington, 557 P.2d at 1146. In Town of Torrington, the court found no necessity for a rule defining a new solid waste disposal site because the relevant statute, WYO.STAT. § 35-502.43 (1957) (now substantially amended as WYO.STAT. § 35-11-502 (Supp.1992)), provided that each site must be treated on an individual basis. Thus, "the use of rules and regulations are of no value at least under the element of this action." Town of Torrington, 557 P.2d at 1146. That case can be distinguished from this case, however, because there the relevant statute anticipated an ad hoc approach to solid waste disposal sites. In this instance, the statute particularly provides for the promulgation of rules and regulations necessary to administer the act.
The EQC also relies upon Thomson v. Wyoming In-Stream Flow Comm., 651 P.2d 778 (Wyo.1982). In that case, the court held the Secretary of State did not have to promulgate rules dealing with the initiative process because the constitution, coupled with the applicable statutes, was self-executing. Thus, there was no requirement that the Secretary adopt rules to implement the constitutional and statutory provisions. The general rule there stated is that "[a] clear statutory direction is enforceable by an agency in accordance with its plain meaning without promulgation of the rule." Thomson, 651 P.2d at 791. In this instance, there does not seem to be any plain meaning without promulgation of a rule that sets the statutory standards for arriving at a classification of lands as "very rare or uncommon." In such an instance, it is appropriate to require the implementation of standards pursuant to the rulemaking power, particularly when that authority is expressly and explicitly delegated in the statute.
We have said, in Jergeson v. Bd. of Trustees of Sch. Dist. No. 7, Sheridan County, 476 P.2d 481, 483-84 (Wyo.1970) (footnote omitted):
As to the failure of the board to adopt rules and regulations required by the Act, this court has frequently called attention to the statutory requirement to adopt rules and regulations, and it is most unfortunate that various agencies have neglected so to do. Undoubtedly, a court would, upon request by an interested person, direct an agency to comply.
See Rolfes v. State ex rel. Burt, 464 P.2d 531 (Wyo.1970); Scarlett v. Town Council, Town of Jackson, Teton County, 463 P.2d 26 (Wyo.1969); Glenn v. Bd. of County Comm'rs, Sheridan County, 440 P.2d 1 (Wyo.1968).
We direct that the EQC adopt the factors and criteria which will serve as standards for the classification of lands as "very rare or uncommon." This direction is consistent with the cases set forth above as well as the statutory requirements. We reverse the decision of the EQC and remand this case for future determination to be made in the light of standards encompassing appropriate criteria and factors for the classification, adopted pursuant to a regular rulemaking proceeding in accordance with the Wyoming Administrative Procedure Act.
NOTES
[1] Although the Administrative Procedure Act uses two words, "rule making," we choose to use one word in accordance with recent practice of the Supreme Court and Congress. KENNETH CULP DAVIS, ADMINISTRATIVE LAW TREATISE § 7:2, at 4 (2d ed. 1979).